# LURIA *v.* UNITED STATES.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 27. Argued April 23, 1913.—Decided October 20, 1913.

Where a point involving sufficiency of the complaint is not raised and defendant does not challenge the statement of the court that it supposes the point will not be raised, it is too late to raise it in this court.

This court concurs in the conclusion reached by the District Court that the residence in a foreign country of one whose certificate of naturalization was attacked as fraudulent was intended to be and was of a permanent nature and justified the proceeding on the part of the United States to cancel the certificate under § 15 of the act of June 29, 1906.

Unverified certificates of unofficial parties as to residence of a naturalized person in a foreign country *held* insufficient to overcome the presumption of permanent residence created under § 15 of the act of June 29, 1906.

The provisions of the second paragraph of § 15 of the act of June 29, 1906, dealing with the evidential effect of taking up a permanent residence in a foreign country within five years after securing a certificate of naturalization applies not only to certificates issued under that law but also to those issued under prior laws.

The words "provisions of this section" used in a statute naturally mean every part of the section, one paragraph as much as another.

A paragraph in a statute which is plain and unambiguous, must be accepted as it reads even though inserted as an amendment by one branch of the legislature.

The statutes, as they existed prior to June 29, 1906, conferred the right to naturalization upon such aliens only as contemplated the continuance of a residence already established in the United States.

Citizenship is membership in a political society and implies the reciprocal obligations as compensation for each other of a duty of allegiance on the part of the member and a duty of protection on the part of the society.

Under the Constitution of the United States a naturalized citizen stands on an equal footing with the native citizen in all respects save that of eligibility to the Presidency.

That which is contrary to the plain implication of a statute is unlaw-

ꞏful, for what is clearly implied is as much a part of a law as that which is expressed.

The spirit of the naturalization laws of the United States has always been that an applicant if admitted to citizenship should be a citizen in fact as well as name and bear the obligations and duties of that status as well as enjoy its rights and privileges.

The provisions of § 15 of the act of June 29, 1906, are not unconstitutional as making any act fraudulent or illegal that was honest and legal when done, or as imposing penalties, or doing more than providing for annulling letters of citizenship to which the possessors were never entitled. *Johannessen v. United States,* 225 U. S. 227.

The establishment of a presumption from certain facts prescribes a rule of evidence and not one of substantive right; and if the inference is reasonable and opportunity is given to controvert the presumption, it is not a denial of due process of law, *Mobile &c. R. R. Co.* v. *Turnipseed,* 219 U. S. 35, even if made applicable to existing causes of action.

The right to have one's controversy determined by existing rules of evidence is not a vested right and a reasonable change of such rules does not deny due process of law.

The taking up of a permanent residence in a foreign country shortly after naturalization has a bearing upon the purpose for which naturalization is sought, and it is reasonable to make it a presumption that such action indicates an absence of intention to reside permanently in the United States; and the provision in § 15 of the act of June 29, 1906, making such action a presumption, rebuttable by proof to the contrary, of intention not to reside permanently in the United States, is not unconstitutional as a denial of due process of law.

A proceeding under § 15 of the act of June 29, 1906, to cancel a certificate of naturalization on the ground that it was fraudulently issued is not a suit at common law but a suit in equity similar to a suit to cancel a patent for land or letters patent for an invention and the defendant is not entitled to a trial by jury under the Seventh Amendment. *United States* v. *Bell Telephone Co.,* 128 U. S. 315.

184 Fed. Rep. 643, affirmed.

THE facts, which involve the construction of § 15 of the act of June 29, 1906, 34 Stat. 596, 601, c. 3592, relating to citizenship and naturalization and the validity of a decree setting aside a certificate of naturalization on the ground that it was fraudulently issued, are stated in the opinion.

*Mr. Louis Marshall,* with whom *Mr. A. M. Friedenberg* was on the brief, for appellant:

In so far as the act of 1906 assumes (though appellant claims that it does not), to deprive the appellant of the citizenship lawfully and without fraud secured by him in 1894, by the decree of a court of competent jurisdiction, twelve years before the passage of that act, it is unconstitutional, in that it violates Art. I, § 8, of the Constitution of the United States, and § 1 of the Fourteenth Amendment thereto.

For purposes of citizenship, persons born and persons naturalized in the United States are placed on an exact equality by the Constitution. *Minor* v. *Happersett,* 21 Wall. 162, 165; *United States* v. *Cruikshank,* 92 U. S. 542; *Lynch* v. *Clarke,* 1 Sandf. Ch. 583, 641, 642; *Dred Scott* v. *Sandford,* 19 How. 393; *Boyd* v. *Thayer,* 143 U. S. 162.

The only distinction between citizenship by birth and citizenship by naturalization, is the provision of the Constitution making only natural born citizens eligible to the office of president. *Elk* v. *Wilkins,* 112 U. S. 94, 101.

Citizenship by birth and by naturalization being thus, for all practical purposes, absolute equivalents, it would seem as though it were as much beyond the power of Congress to deprive one who has become a naturalized citizen, of his citizenship, as it would be to deprive a natural born citizen of that right.

For limitations on the power of Congress to deal with the subject of naturalization, see *Osborn* v. *United States Bank,* 9 Wheat. 825; *United States* v. *Wong Kim Ark,* 169 U. S. 702, 703. *Johannessen* v. *United States,* 225 U. S. 227, does not depart from the decisions cited or determine any of the questions which are now presented for consideration.

The contention that the act merely enacts a rule of evidence cannot be sustained. It affects substantial rights.

While it is true that it is within the province of a legislature to enact that proof of one fact shall be *prima facie* evidence of another, the inference must not be arbitrary, and there must be a rational relation between the two facts. *Bailey* v. *Alabama,* 219 U. S. 219; *People* v. *Cannon,* 139 N. Y. 32, 43.

The inference of a lack of *bona fide* intention to become a citizen from appellant's subsequent action, is purely arbitrary, and is unreasonable, unnatural and extraordinary.

The cases cited in the opinion of the court below do not sustain this legislation.

That portion of § 15 of the act of 1906 which is involved in this action, is confined in its operation to cases of naturalization under the act of 1906, and does not include persons naturalized under the prior act. See *Johannessen Case,* 225 U. S. 227; *United States* v. *Mansour,* 170 Fed. Rep. 671.

Under the Naturalization Act as it existed at the time of the issuance to the appellant of his certificate of citizenship, there was no requirement that the applicant should intend to reside permanently within the United States. No oath to that effect was called for. On the other hand, the act of 1906 requires an oath from the applicant, that it is his intention to reside permanently within the United States.

While it is true that most of the provisions of § 15 are remedial, and are, therefore, properly applicable to any case relating to naturalization which comes within their terms, irrespective of the time when the naturalization takes place, that paragraph constitutes an exception, not only by necessary implication, but by its express terms, to the general and remedial provisions contained in the section.

Conclusive evidence of this statutory purpose is afforded by the history of the second paragraph of § 15, now under consideration.

A court may refer to the public history of the times, and to legislative documents, to ascertain the reason of an enactment as well as the meaning of particular provisions therein, and to that end may consider the evil which it is designed to remedy, contemporaneous events, and the existing situation with regard to the subject-matter of the legislation as it was pressed upon the attention of the legislative body. *United States* v. *Union Pacific R. R. Co.,* 91 U. S. 72, 79; *Platt* v. *Union Pacific R. R. Co.,* 99 U. S. 60; *Holy Trinity Church* v. *United States,* 143 U. S. 463; *The Delaware,* 161 U. S. 472; *Shaw* v. *Kellogg,* 170 U. S. 331; *Binns* v. *United States,* 194 U. S. 495; *Johnson* v. *Southern Pacific Co.,* 196 U. S. 19; *McLean* v. *Arkansas,* 211 U. S. 339; *Wadsworth* v. *Boysen,* 148 Fed. Rep. 771, 775; *Tenement House Department* v. *Moeschen,* 179 N. Y. 325; *Musco* v. *United Surety Co.,* 196 N. Y. 459, 465.

For the genesis and passage of the act of 1906, see Report of Commission of November 8, 1905, House Doc. No. 46, 59th Cong., 1st. Sess.; Cong. Rec., vol. 40, pt. 8, pp. 7869–7871, 7874.

For its history in the Senate see Vol. 40, Cong. Rec., pp. 7913, 9009, 9359–9361, 9407, 9411, 9505, 9620, 9691.

Even if § 15 were in terms applicable to the appellant and were as to him constitutional, he did not take up a permanent residence at Johannesburg, but continued to be a legal resident of the United States.

Residence is always a matter of intention. His intention to remain a resident and citizen of the United States was manifested over and over again. *Dupuy* v. *Wurtz,* 53 N. Y. 556; *Moorhouse* v. *Lord,* 10 H. L. C. 272; *Marchioness of Huntly* v. *Gaskell,* 1906 App. Cas. 56 and *Matter of Newcomb,* 192 N. Y. 238.

This legislation violates Art. I, § 9, of the Federal Constitution, because it is in effect a bill of attainder.

A bill of attainder is a legislative act which inflicts

punishment without judicial trial. *Cummings* v. *Missouri,* 4 Wall. 323; *In re Yung Sing Hee,* 36 Fed. Rep. 437.

The act is also an *ex post facto* law, so far as the present case is concerned, because the defendant is punished for acts committed prior to the enactment of the statute.

A statute belongs to the class of *ex post facto* laws which, by its necessary operation, and in its relation to the offense, or its consequences, alters the situation of the accused to his disadvantage. *Cummings* v. *Missouri,* 4 Wall. 277; *Ex parte Garland,* 4 Wall. 333; *Thompson* v. *Utah,* 170 U. S. 351; *Calder* v. *Bull,* 3 Dallas, 386; *Green* v. *Shumway,* 39 N. Y. 418. *Johannessen* v. *United States,* 225 U. S. 227, far from being adverse to this contention, practically sustains it.

The appellant was entitled to a trial by jury, of the issues presented in the pleadings under the Seventh Amendment. See *Parsons* v. *Bedford,* 3 Pet. 432, 446; *Knickerbocker Insurance Co.* v. *Comstock,* 16 Wall. 258; *Garnhart* v. *United States,* 16 Wall. 162; *The Sarah,* 8 Wheat. 391; *Morris* v. *United States,* 8 Wall. 507; *Elliott* v. *Toeppner,* 187 U. S. 327. *United States* v. *Mansour,* 170 Fed. Rep. 671, does not apply. It has no application to a case where citizenship was unquestionably acquired through valid naturalization proceedings, and where it is sought to take away such right of citizenship because of an alleged change of residence or domicile subsequent to naturalization. In its essential nature such a proceeding seeks the imposition of a penalty or forfeiture, and therefore involves common law as distinguished from equitable rights.

*Mr. Assistant Attorney General Harr* for the United States:

Section 15 of the Naturalization Act of June 29, 1906, is constitutional, even as applied to certificates of naturalization procured under prior statutes. *Johannessen* v. *United States,* 225 U. S. 227.

The provisions of the second paragraph of the act of

1906, making the taking up of permanent residence abroad within five years after an alien's naturalization *prima facie* evidence of a lack of intention on his part to become a permanent resident of the United States at the time of filing his application for citizenship, is valid and constitutional.

The rule declared is only *prima facie,* and yields, as expressly provided by the statute itself and as held by the District Court, to countervailing evidence. Congress may establish such a presumption. *Mobile, J. & K. C. R. R.* v. *Turnipseed,* 219 U. S. 35, 42; *Bailey* v. *Alabama,* 219 U. S. 219, 238.

The fact that the presumption applies to the trial of an issue to be determined by facts which occurred before the presumption existed is immaterial. *Webb* v. *Den,* 17 How. 576; *Howard* v. *Moot,* 64 N. Y. 262; *Rich* v. *Flanders,* 39 N. H. 304.

This is only a species of the general regulation of procedure which the legislature may always change, even when, as in the case of criminal statutes passed by the States, it is subject to the prohibition against *ex post facto* legislation. *Hopt* v. *Utah,* 110 U. S. 574; *Thompson* v. *Missouri,* 171 U. S. 380. How far back such an inference shall reach is a question of degree. *Keller* v. *United States,* 213 U. S. 149.

The provisions of the second paragraph of § 15 of the Naturalization Act of 1906 apply to persons who have secured certificates of citizenship under the provisions of previous acts.

The second paragraph of the act of 1906 merely creates a rule of evidence which is equally applicable to certificates of naturalization secured under prior statutes, and Congress intended, as it said in the fourth paragraph, that "the provisions of this section" should apply as well to such certificates as to those secured under the act of 1906.

For the purposes of this case, it is immaterial whether

the second paragraph of the act of 1906 applies to certificates of naturalization secured under prior statutes.

The Government was forced to establish and did establish, not only that appellant had established a permanent residence in South Africa, but that he went there under such circumstances as to indicate that at the time of his naturalization he did not intend to reside permanently in the United States.

A case of fraud is presented therefore independent of the *prima facie* rule declared by the second paragraph of § 15 of the act of 1906. The requisite fraudulent intent could be inferred, under such circumstances, without the assistance of that rule. *Bailey* v. *Alabama*, 219 U. S. 219; *Commonwealth* v. *Rubin*, 165 Massachusetts, 453; *Keller* v. *United States*, 213 U. S. 149 (dissent).

Even if the rule of evidence established by the second paragraph of § 15 of the act of 1906 be held not to apply to certificates of naturalization secured under prior acts, the provisions of the first paragraph nevertheless authorize their cancellation for fraud or illegality, by virtue of the express declaration of the fourth paragraph.

The evidence shows that appellant took up his permanent residence in South Africa under such circumstances as to justify the presumption that he had no intention of residing permanently in the United States at the time of his naturalization.

The District Court correctly construed the words "permanent residence" in the second paragraph of the Naturalization Act of June 29, 1906, as meaning domicil.

As to what facts are necessary to prove a change of domicil see *Ennis* v. *Smith*, 14 How. 422; *Morris* v. *Gilmer*, 129 U. S. 328; *Anderson* v. *Watt*, 138 U. S. 706.

Appellant was not entitled to trial by jury.

A suit to cancel a certificate of naturalization on the ground of fraud in no wise differs from a suit to cancel a patent for lands, and is clearly an equitable proceeding.

*United States.* v. *Mansour,* 170 Fed. Rep. 671, affirmed 226 U. S. 604.

Mr. Justice Van Devanter delivered the opinion of the court.

This appeal brings under review a decree setting aside and canceling, under § 15 of the act of June 29, 1906, 34 Stat. 596, 601, c. 3592, as fraudulently and illegally procured, a certificate of citizenship theretofore issued to George A. Luria by the court of common pleas of the city and county of New York. 184 Fed. Rep. 643.

The petition was not carefully prepared, and yet it doubtless was designed to charge that the certificate was fraudulently and illegally procured in that Luria did not at the time intend to become a permanent citizen of the United States but only to obtain the indicia of such citizenship in order that he might enjoy its advantages and protection and yet take up and maintain a permanent residence in a foreign country. There was a prayer that the certificate be set aside and canceled because "procured illegally." The sufficiency of the petition was not challenged, and the case was heard and determined as if the issue just described were adequately tendered. In the opinion rendered by the District Court it was said, after observing that the petition was subject to criticism: "That point, however, was not raised, and I suppose the defendant does not mean to raise it." This view of his attitude passed unquestioned then, and it is too late to question it now.

The case was heard upon an agreed statement and some accompanying papers, from all of which it indubitably appeared that Luria was born in Wilna, Russia, in 1865 or 1868 and came to New York in 1888; that he entered a medical college of that city the next year and was graduated therefrom in 1893; that he applied for and procured

the certificate of citizenship in July, 1894; that in the fol-
lowing month he sought and obtained a passport from the
Department of State, and in November left the United
States for the Transvaal, South Africa, arriving there in
December; that from that time to the date of the hearing,
in December, 1910, he resided and practiced his profession
in South Africa; that he joined the South African Medical
Association and served in the Boer war; that his only
return to the United States was for four or five months in
1907, for the temporary purpose of taking a postgraduate
course in a medical school in New York; and that when
entering that school he gave as his address, Johannes-
burg, South Africa.   From the facts so appearing the
District Court found and held that within a few months
after securing the certificate of citizenship Luria went
to and took up a permanent residence in South Africa,
and that this, under § 15 of the act of 1906, constituted
*prima facie* evidence of a lack of intention on his part
to become a permanent citizen of the United States at
the time he applied for the certificate.   In the papers
accompanying the agreed statement there were some
declarations which, if separately considered, would tend
to engender the belief that he had not taken up a perma-
nent residence in South Africa and was only a temporary
sojourner therein, but the District Court, upon weighing
and considering those declarations in connection with all
the facts disclosed, as was necessary, concluded that the
declarations could not be taken at their face value and
that the residence in South Africa was intended to be, and
was, permanent in character.   We concur in that conclu-
sion.

In his answer, Luria interposed the defense that his
presence in the Transvaal was solely for the purpose of
promoting his health, the implication being that when
he went there his health was impaired in such a way that
a residence in that country was necessary or advisable

and therefore that taking up such residence ought not to be accepted as indicating that when he was naturalized it was not his intention to become a permanent citizen of the United States. He does not appear to have been present at the hearing, and, although there was ample time (ten months after filing his answer) to take his deposition, it was not taken, and there was substantially no attempt to sustain this defense or to explain his permanent removal to the Transvaal so soon after he procured the certificate of citizenship. True, it appeared that in 1909 he filed at the United States Consulate in Johannesburg, in support of an application for registration as a citizen of the United States, two certificates from medical practitioners, stating, in effect, that his residence in the Transvaal was for purposes of health; but those certificates did not rise to the dignity of proof in the present case. Besides being *ex parte*, they were meagre, not under oath, and not accepted by the consular officers as adequate or satisfactory. Thus, we think the District Court rightly held that there was no countervailing evidence sufficient to overcome the evidential effect of taking up a permanent residence in the Transvaal so shortly following the naturalization.

Section 15 of the act of 1906, under which this suit was conducted, is as follows (34 Stat. 601):

"SEC. 15. That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship *on the ground of fraud or on the ground that such certificate of citizenship was illegally procured.* In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have

sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

*"If any alien who shall have secured a certificate of citizenship under the provisions of this Act shall, within five years after the issuance of such certificate, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his application for citizenship, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the cancellation of his certificate of citizenship as fraudulent, and the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to cancel certificates of citizenship.*

"Whenever any certificate of citizenship shall be set aside or canceled, as herein provided, the court in which such judgment or decree is rendered shall make an order canceling such certificate of citizenship and shall send a certified copy of such order to the Bureau of Immigration and Naturalization; and in case such certificate was not originally issued by the court making such order it shall direct the clerk of the court to transmit a copy of such order and judgment to the court out of which such cer-

tificate of citizenship shall have been originally issued. And it shall thereupon be the duty of the clerk of the court receiving such certified copy of the order and judgment of the court to enter the same of record and to cancel such original certificate of citizenship upon the records and to notify the Bureau of Immigration and Naturalization of such cancellation.

"*The provisions of this section shall apply not only to certificates of citizenship issued under the provisions of this act, but to all certificates of citizenship which may have been issued heretofore by any court exercising jurisdiction in naturalization proceedings under prior laws.*"

One of the questions arising under this section is, whether the second paragraph, dealing with the evidential effect of taking up a permanent residence in a foreign country within five years after securing a certificate of citizenship, is confined to certificates issued under the act of 1906, or applies also to those issued under prior laws, as was Luria's. If that paragraph were alone examined, the answer undoubtedly would be that only certificates under the act of 1906 are included. But the last paragraph also must be considered. It expressly declares that "the provisions of this section" shall apply, not only to certificates issued under the act of 1906, but also to all certificates theretofore issued under prior laws. The words "the provisions of this section" naturally mean every part of it, one paragraph as much as another; and that meaning cannot well be rejected without leaving it uncertain as to what those words embrace. Counsel refer to the Congressional Record, which shows that the second paragraph was inserted by way of amendment while the section was being considered in the House of Representatives. But as the section was in its present form when it was finally adopted by that body, as also when it was adopted by the Senate and approved by the President, it would seem that the last paragraph, in view of its plain and unam-

biguous language, must be accepted as extending the preceding paragraphs to all certificates, whether issued theretofore under prior laws or thereafter under that act.

But it is said that it was not essential to naturalization under prior laws, Rev. Stat., §§ 2165–2170, that the applicant should intend thereafter to reside in the United States; that, if he otherwise met the statutory requirements, it was no objection that he intended presently to take up a permanent residence in a foreign country; that the act of 1906, differing from prior laws, requires the applicant to declare "that it is his intention to reside permanently within the United States"; and therefore that Congress, when enacting the second paragraph of § 15, must have intended that it should apply to certificates issued under that act and not to those issued under prior laws. It is true that § 4 of the act of 1906 exacts from the applicant a declaration of his intention to reside in the United States, and it is also true that the prior laws did not expressly call for such a declaration. But we think it is not true that under the prior laws it was immaterial whether the applicant intended to reside in this country or presently to take up a permanent residence in a foreign country. On the contrary, by necessary implication, as we think, the prior laws conferred the right to naturalization upon such aliens only as contemplated the continuance of a residence already established in the United States.

Citizenship is membership in a political society and implies a duty of allegiance on the part of the member and a duty of protection on the part of the society. These are reciprocal obligations, one being a compensation for the other. Under our Constitution, a naturalized citizen stands on an equal footing with the native citizen in all respects, save that of eligibility to the Presidency. *Minor* v. *Happersett*, 21 Wall. 162, 165; *Elk* v. *Wilkins*, 112 U. S. 94, 101; *Osborn* v. *Bank*, 9 Wheat. 738, 827. Turning to the naturalization laws preceding the act of 1906, being

those under which Luria obtained his certificate, we find that they required, first, that the alien, after coming to this country, should declare on oath, before a court or its clerk, that it was *bona fide* his intention to become a citizen of the United States and to renounce forever all allegiance and fidelity to any foreign sovereignty; second, that at least two years should elapse between the making of that declaration and his application for admission to citizenship; third, that as a condition to his admission the court should be satisfied, through the testimony of citizens, that he had resided within the United States five years at least, and that during that time he had behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same; and, fourth, that at the time of his admission he should declare on oath that he would support the Constitution of the United States and that he absolutely and entirely renounced and abjured all allegiance and fidelity to every foreign sovereignty. These requirements plainly contemplated that the applicant, if admitted, should be a citizen in fact as well as in name—that he should assume and bear the obligations and duties of that status as well as enjoy its rights and privileges. In other words, it was contemplated that his admission should be mutually beneficial to the Government and himself, the proof in respect of his established residence, moral character, and attachment to the principles of the Constitution being exacted because of what they promised for the future, rather than for what they told of the past.

By the clearest implication those laws show that it was not intended that naturalization could be secured thereunder by an alien whose purpose was to escape the duties of his native allegiance without taking upon himself these of citizenship here, or by one whose purpose was to reside permanently in a foreign country and to use his natural-

ization as a shield against the imposition of duties there, while by his absence he was avoiding his duties here. Naturalization secured with such a purpose was wanting in one of its most essential elements—good faith on the part of the applicant. It involved a wrongful use of a beneficent law. True, it was not expressly forbidden; neither was it authorized. But, being contrary to the plain implication of the statute, it was unlawful, for what is clearly implied is as much a part of a law as what is expressed. *United States* v. *Babbit*, 1 Black, 55, 61; *McHenry* v. *Alford*, 168 U. S. 651, 672; *South Carolina* v. *United States*, 199 U. S. 437, 451.

Perceiving nothing in the prior laws which shows that Congress could not have intended that the last paragraph of § 15 of the act of 1906 should be taken according to the natural meaning and import of its words, we think, as before indicated, that it must be regarded as extending the preceding paragraphs of that section to all certificates of naturalization, whether secured theretofore under prior laws or thereafter under that act.

Several contentions questioning the constitutional validity of § 15 are advanced, but all, save the one next to be mentioned, are sufficiently answered by observing that the section makes no discrimination between the rights of naturalized and native citizens, and does not in anywise affect or disturb rights acquired through lawful naturalization, but only provides for the orderly cancellation, after full notice and hearing, of certificates of naturalization which have been procured fraudulently or illegally. It does not make any act fraudulent or illegal that was honest and legal when done, imposes no penalties, and at most provides for the annulment, by appropriate judicial proceedings, of merely colorable letters of citizenship, to which their possessors never were lawfully entitled. *Johannessen* v. *United States*, 225 U. S. 227. See also *Wallace* v. *Adams*, 204 U. S. 415.

Objection is specially directed to the provision which declares that taking up a permanent residence in a foreign country within five years after the issuance of the certificate shall be considered *prima facie* evidence of a lack of intention to become a permanent citizen of the United States at the time of the application for citizenship, and that in the absence of countervailing evidence the same shall be sufficient to warrant the cancellation of the certificate as fraudulent. It will be observed that this provision prescribes a rule of evidence, not of substantive right. It goes no farther than to establish a rebuttable presumption which the possessor of the certificate is free to overcome. If, in truth, it was his intention at the time of his application to reside permanently in the United States, and his subsequent residence in a foreign country was prompted by considerations which were consistent with that intention, he is at liberty to show it. Not only so, but these are matters of which he possesses full, if not special, knowledge. The controlling rule respecting the power of the legislature in establishing such presumptions is comprehensively stated in *Mobile &c. Railroad Co.* v. *Turnipseed,* 219 U. S. 35, 42, 43, as follows:

"Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue, is but to enact a rule of evidence, and quite within the general power of government. Statutes, national and state, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. . . .

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary

mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed.

"If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him."

Of like import are *Fong Yue Ting* v. *United States*, 149 U. S. 698, 729; *Adams* v. *New York*, 192 U. S. 585, 599; *Bailey* v. *Alabama*, 219 U. S. 219, 238; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 81; *Reitler* v. *Harris*, 223 U. S. 437, 441.

Nor is it a valid objection to such legislation that it is made applicable to existing causes of action, as is the case here, the true rule in that regard being well stated in Cooley's Constitutional Limitations, 7th ed. 524, in these words:

"It must also be evident that *a right to have one's controversies determined by existing rules of evidence is not a vested right*. These rules pertain to the remedies which the State provides for its citizens; and generally in legal contemplation they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the remedy, they must therefore at all times be subject to modification and control by the legislature; and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those States in which retrospective laws are forbidden. For the law as changed would only prescribe rules for presenting the evidence in legal controversies in the future; and it could not therefore be called retrospective

even though some of the controversies upon which it may act were in progress before."

This court applied that rule in *Webb* v. *Den,* 17 How. 576, 578; *Hopt* v. *Utah,* 110 U. S. 574, 590; *Thompson* v. *Missouri,* 171 U. S. 380; and *Reitler* v. *Harris, supra.*

That the taking up of a permanent residence in a foreign country shortly following naturalization has a bearing upon the purpose with which the latter was sought and affords some reason for presuming that there, was an absence of intention at the time to reside permanently in the United States is not debatable. No doubt, the reason for the presumption lessens as the period of time between the two events is lengthened. But it is difficult to say at what point the reason so far disappears as to afford no reasonable basis for the presumption. Congress has indicated its opinion that the intervening period may be as much as five years without rendering the presumption baseless. That period seems long, and yet we are not prepared to pronounce it certainly excessive or unreasonable. But we are of opinion that as the intervening time approaches five years the presumption necessarily must weaken to such a degree as to require but slight countervailing evidence to overcome it. On the other hand, when the intervening time is so short as it is shown to have been in the present case, the presumption cannot be regarded as yielding to anything short of a substantial and convincing explanation. So construed, we think the provision is not in excess of the power of Congress.

Lastly it is urged that the District Court erred in not according to the defendant a trial by jury. The claim is predicated upon the Seventh Amendment to the Constitution, which declares that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." This, however, was not a suit at common law. The right asserted and the remedy sought were essentially equitable,

not legal, and this, according to the prescribed tests, made it a suit in equity. *Parsons* v. *Bedford,* 3 Pet. 433, 447; *Irvine* v. *Marshall,* 20 How. 558, 565; *Root* v. *Railway Company,* 105 U. S. 189, 207. In this respect it does not differ from a suit to cancel a patent for public land or letters patent for an invention. See *United States* v. *Stone,* 2 Wall. 525; *United States* v. *San Jacinto Tin Co.,* 125 U. S. 273; *United States* v. *Bell Telephone Co.,* 128 U. S. 315.

Finding no error in the record, the decree is

*Affirmed.*