## PERRONE v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
April 30, 1928.

No. 3741.

Aliens ⬅71½(18)—Certificate of naturalization held not subject to cancellation under evidence on ground defendant within five years took permanent residence in native country (8 USCA § 405).

In suit to cancel certificate of naturalization, issued in 1900 to one who had been Italian subject, on ground defendant had within five years taken permanent residence in Italy, defendant's evidence *held* to have overcome prima facie effect, under 8 USCA § 405, of certificate of United States consul in Italy, and certificate of naturalization was not subject to cancellation.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Bill by the United States to cancel the certificate of naturalization of Raffaele Perrone. From a decree for plaintiff (21 F. [2d] 583), defendant appeals. Bill dismissed, and government directed to restore to defendant the certificate lifted by consul.

W. H. Coleman and Arthur L. McLaughlin, Jr., both of Pittsburgh, Pa., for appellant.

John D. Meyer, U. S. Atty., and Raymond D. Evans, both of Pittsburgh, Pa., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, on a bill brought by the United States to cancel the certificate of naturalization of Raffaele Perrone, it was so decreed, whereupon this appeal was taken. The act of Congress authorizing cancellation provides it may be done where the naturalized person, "within five years after the issuance of such certificate, return to the country of his nativity * * * and take permanent residence therein." 8 USCA § 405. As Perrone was naturalized May 22, 1900, the crucial period is between then and May 22, 1905.

There is no question but that he returned to Italy in 1902, but the decisive question is whether before May 22, 1905, he took permanent residence there. The mischief Congress had in view in passing this act was to prevent persons acquiring American citizenship, and within a short time, in this case five years, returning to their native country and again taking up permanent residence. It was this immediate, quick making of a permanent residence Congress enacted against. If he did this within five years, his certificate could be canceled by the statute no matter what he did later. If on the other hand he did not within five years take up permanent residence, then no matter what he afterwards did in the way of permanent residence did not subject him to the penalty of this statute. From these considerations it will be apparent that the crucial question of fact here involved is, Did Perrone take a permanent residence in Italy prior to May 22, 1905?

At the hearing the government produced no witnesses, but relied entirely on the certificate of the United States consul at Naples, Italy, made October 15, 1924, which is as follows:

"I, Howard K. Travers, do hereby certify that Raffaele Perrone, a native of Formicola, province of Caserta, Italy, who was naturalized before the District Court at Pittsburgh, Pennsylvania, on May 22, 1900, and who is now residing at Formicola, province of Caserta, Italy, established a permanent residence in Italy, a foreign country, on or about 1902; that is, within five years after his naturalization as a citizen of the United States.

"That the above certification is based on the following facts stated by Mr. Perrone:

"That he established a permanent residence in Italy, his native country, within two years after his naturalization as a citizen of the United States; that he has seven children born at Formicola, province of Caserta, Italy, as follows: 1904, 1906, 1909, 1910, 1914, and 1918; that he does not intend to take his family back with him; that he follows the occupation of farmer and owns property in Italy worth about 10,000 lire, including the house in which he lives; that he punctually exercises all political and civil rights in this country; that he maintains no ties of business or property with the United States and, consequently, cannot be considered a citizen of the United States."

By the Naturalization Act of June 29, 1906 (8 USCA § 405), such certificate "shall be admissible in evidence in all courts in proceedings to cancel certificates of citizenship," and by the same act the fact that the person "within five years after the issuance of such certificate, return to the country of his nativity, * * * and take permanent residence therein, * * * shall be considered prima facie evidence of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his application for citizenship, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the cancellation of his certificate of citizenship as fraudulent."

At this point we note we are here dealing with the forfeiture of citizenship, a matter of grave moment. Whether such citizenship arose from birth or naturalization, both stand on the same high footing. And we further note this statutory proceeding is based on fraud in the obtaining of the certificate. While the certificate of the consul is made prima facie evidence of a fraudulent procurement, yet it is made so only "in the absence of countervailing evidence."

Turning to the certificate and seeing that the act of Congress provides "the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity," we naturally inquire why, if the consul, who by his own statement knew that Perrone had in 1902 taken permanent residence in Italy, for he so states, waited for the three remaining years of the forfeiture period and for nineteen years thereafter, to wit, until October 15, 1924, to report Perrone's alleged permanent residence in Italy to the State Department? Was he led to make it at that late date not by what took place in the five years of possible statutory forfeiture and fraud, but by what took place in the nineteen years subsequent? Again in studying the certificate we find there are but two facts certified to which are covered by the statutory forfeiture period, viz. "that he established a permanent residence in Italy, his native country, within two years after his naturalization" and that he had a child born there in 1904; for apart from these two assertions it will be noted that every other fact certified to is after the five-year period, and most of them refer to the date of 1924, viz. "he does not intend," "he follows the occupation," "owns property," "exercises all political and civil rights," and "maintains no ties of business or property with the United States." These and the subsequent birth of children are all facts happening after 1905 and evidencing his intent when the certificate was made in 1924.

Now what is the countervailing evidence? Perrone testified he came to the United States in 1894 and worked steadily at one blast furnace for six years. Part of that time he lived in the home of a fellow Italian and part in the family of his brother's wife. It will thus be seen from the continuity of his residence here, the steadiness of his employment, and the fixity of his residence, that, when he took out his naturalization papers in 1900, every circumstance was consistent with and none adverse to a purpose to maintain his residence here. He was not married, and his home at his brother's showed he had family ties to keep him here. He kept an account at bank. After his naturalization he continued the same work and residence for two years, evidencing by these six years before naturalization and two years after it, the same purpose to remain. Referring to his residence in her family, his sister testified, "He came to live with me in 1897, and lived with me until 1902." In 1902 he went back to Italy, married, and stayed until 1903, and returned and again went to work at the same furnace until 1905. A child was born in 1904, and he again returned to Italy and stayed until 1907, when he returned to the United States and lived with a sister in the state of New York, where he went into the saloon business for two years. This period overlaps the five-year forfeiture period. Do these proofs tend to show that Perrone had taken a permanent residence in Italy? His long prior residence here, the stability of his work, his relatives residing here, his return to his work in the United States after comparatively short absences in Italy, his not waiting there even until his child was born, are all facts which, to our mind, tend to show he meant to make America rather than Italy his ultimate home. His acts subsequent to 1905, when considered in the light of the proofs, are in line with this purpose. He returned again to Italy in 1909, worked while there, and came back to the United States in 1910, and resumed work in the furnace until 1913. There is no evidence when he inherited the farm on which he and his family live, but there is no denial and satisfactory proof why he did not bring his family over. In 1913 he went to Italy to get his family, and while making preparations to bring them was caught by the war, drafted into the Italian Army and served fourteen months. He applied to the consul to allow him to return to America and join the United States Army, but was told by him, "Well, it is the same thing, if you fight for this country or America." At the close of the war he was not able to return on account of malaria, though he was offered free return passage. When he finally applied for a passport, his naturalization certificate was lifted by the consul, and he was subsequently compelled to get an Italian passport in order to come back and contest this cancellation proceeding. His testimony is that his wife was in poor health and could not make the voyage. In that he

is corroborated by his sister-in-law, who testified "He always go to his wife, and she always seemed in such hard luck, and the last time he said he tried to bring her back, because he couldn't afford to go back and forth all the time." He testified he inherited the farm on which he is charged with making a permanent residence several years after 1905, and that he has unsuccessfully tried to sell it. He says he has not voted in Italy or exercised the rights of a citizen.

While the proofs show these several visits to Italy subsequent to the five-year period, his prolonged stay there, the birth of children, yet, considering his explanation of the war, his wife's illness, his own, the enforced delay in his return owing to the consul lifting his certificate, the fact that, when he was able to return, he went back to the same work and to his accustomed place, and in view of his positive assertion that he never gave up his citizenship, that he values his American citizenship enough to warrant him in coming back from Italy to contest it, we think the prima facies of the consul's certificate have been overcome and that the bill should be dismissed, and the government directed to restore to him the certificate lifted by the consul.