## WILL OF WEBER.

*May 11—June 18, 1928.*

For the appellants there was a brief by *Rowan, Kalaher & Stoecker* of Milwaukee, and oral argument by *F. J. Rowan.*

*Charles F. Millmann* of Milwaukee, for the respondent.

CROWNHART, J. This is an appeal from an order admitting the will of Louise Weber, deceased, to probate. The appellants contested the probate on the grounds that the will

was procured by undue influence of a son, Nicholas Weber, a beneficiary under the will, and that the testatrix was incompetent to make a will at the time because of senile dementia. A large amount of testimony was taken, and at the conclusion of the hearing the court made his findings of fact. The third and fourth findings are as follows:

"3. That at the time of the execution and publication of said instrument as aforesaid the said Louise Weber was of sound and disposing mind and memory and of full age to execute a will, and was in all respects competent to dispose of her estate.

"4. That at the time of the execution and publication of said instrument as aforesaid said Louise Weber was not under any undue restraint or influence, and that the said will is her free act and deed."

An examination of the evidence convinces us that it amply sustains the findings of fact of the trial court. It is unnecessary to review the evidence, which is extensive and taken up largely with details.

The essential facts, briefly stated, are: Testatrix's husband died in September, 1918. On October 22, 1918, at the age of seventy-six, testatrix made her will. At that time she was the mother of six living children. She lived on a small farm in Milwaukee county, and with her lived her daughter Lillie, who was incompetent. The other children, two sons and three daughters, lived at various places in Milwaukee and Waukesha counties. All were on friendly terms with the mother. Shortly before the will was made Nicholas told his employer, Lange, that his mother wanted to see Lange about drawing a will. Lange was a friend of her husband before he died, and had been to the farm home and was acquainted with the testatrix. Lange went out to the farm with Nicholas and saw the testatrix. He then went to Judge SHERIDAN, of the Milwaukee county court, and requested him to draw a will for the testatrix. Judge SHERIDAN went to the farm with Lange, met the testatrix in

the presence of Lange, and took a memorandum of how she wished her will drawn, went back to Milwaukee, drew the will in blank, and gave it to Lange. Lange, with two men working for him, and Nicholas, drove out to the farm. Nicholas did not go into the house; the others did. Lange read the will, paragraph by paragraph, asking testatrix after each if that was the way she wanted her will, to which she answered in the affirmative. Afterward she signed in the presence of the three witnesses, who each signed as witnesses in her presence and in the presence of each other, at her request. The will contains the usual attesting clause, including this statement signed by witnesses: "We further state that in our opinion the testatrix is of sound and disposing mind and memory." Testatrix then gave the will to Lange, with the request that he take care of it. Lange placed it in his deposit box in a bank, without disclosing it to Nicholas or any one else, and there it remained until testatrix died in December, 1926.

The will, in view of the circumstances, was a natural one. Testatrix had only a small estate of some $7,000. She had an incompetent daughter, who could not take care of herself, and very naturally that gave her most concern. Her other children, while poor, could get along and care for themselves. Nicholas was the son who looked after his parents' comfort more than the others, and to him the mother turned to look after the incompetent daughter. She therefore gave each of her children one dollar, excepting Nicholas and Lillie. To Nicholas she gave in trust all the balance of her property, the income thereof to be used to support Lillie, and the remainder to Nicholas at Lillie's death.

There is no satisfactory evidence that Nicholas brought any pressure to bear on his mother to prefer him in her will. He was not present when Judge SHERIDAN interviewed his mother for data to draw the will; he was not present when the will was signed; he never saw the will until

after his mother died. Under the will Nicholas gets nothing during the life of Lillie, and Lillie may survive him.

The evidence of testatrix's incapacity to make a will is based on details of her life and conduct, which might mean much or little according to the court's view of the testimony as it came from the witnesses in court. The evidence was of facts and circumstances long gone by, and which might be greatly magnified in the minds of witnesses in that time, or their memory might be fallible. The trial judge, who heard and saw the witnesses, could best judge of the weight to be given evidence of that kind.

The appellants complain that the court refused to admit in evidence a judgment of the circuit court, entered in 1926, to the effect that testatrix, in 1920, and "for a long time prior thereto," was incompetent to make a deed of her property. The ruling of the court was correct. Presumptions do not run backward, and a finding of incompetency in 1920 is not evidence of incompetency in 1918. *Small v. Champeny,* 102 Wis. 61, 78 N. W. 407.

The appellants claim that the failure of Nicholas to testify on the hearing created an inference that he refrained from testifying because the truth, if made to appear, would not aid his contention. That is a general rule, which does not prevail here, for the absence of Nicholas from the witness stand was accounted for by his illness.

There is really no serious controversy over the law of the case. The contest is over the facts, and the findings of the trial court are sufficiently supported by the evidence so that they cannot be disturbed.

*By the Court.*—The order and judgment of the county court admitting the will to probate are affirmed.

DOERFLER, J., took no part.

ESCHWEILER, J. (*dissenting*). In this case an aged mother, on friendly terms with all her children, signs an

instrument purporting to be her will, by which, after providing for the use of the income for the care of an incompetent daughter, she gives her entire estate to one of six children. This is the one who alone of all the children knew of the execution of the will. He, thus favored, is not charged with any active duty towards the unfortunate daughter, but receives a presently vested remainder in all the estate.

I can see no good reason under the testimony why this son should be preferred to the absolute exclusion of the other four children, and to that extent the will under this evidence is, in my judgment, clearly an unnatural distribution of her property.

In June, 1920, less than two years after the making of the will, she deeds to this favored son a piece of real estate which had been bought with her money in the preceding year and which money she received through her husband, who died just a month before the will was signed. In January, 1922, a suit was commenced in the circuit court to set aside this deed, and following that the incompetent daughter, Lillie, was committed to one of the county institutions, where she remains. The judgment rendered in that action in April, 1926, was offered in evidence by the contestants below but was refused. One of the recitals of such judgment was to the effect that in June, 1920, the time of the conveyance to the favored son, and "for a considerable time prior thereto," the favored son, respondent here, occupied a position of trust and confidence toward the mother and exercised a dominating influence over her.

I think that such judgment should have been received and given great consideration in determining the question presented on this will contest. This was a solemn adjudication that the son so exclusively favored in the will of 1918 had within two years from that time obtained, by his undue influence over the testatrix, property which was more than one half in value of the entire estate. Such a judgment,

after a contest in which the favored son, respondent here, was a party and witness, though not a witness on the contest here, should be considered of very persuasive if not controlling effect upon the important questions in this contest, namely, the susceptibility of the aged testatrix to the influence of the son; and as to whether he was of a disposition to exercise undue and improper influence upon his aged mother.

While the general rule is clear that proof of the existence of a particular condition does not support a presumption as to its existence at a prior time, yet such rule has its exceptions (*Ellis v. State,* 138 Wis. 513, 524, 119 N. W. 1110), where evidence of insolvency six months after the particular time was held might be proper. That exceptions are recognized, particularly where the question is one of intent, is well illustrated in *Luria v. U. S.* 231 U. S. 9, 27, 34 Sup. Ct. 10. Such backward-running presumptions are recognized in many cases in the law of crimes, as where present possession of property is evidence of prior guilt. *Yee Hem v. U. S.* 268 U. S. 178, 184, 45 Sup. Ct. 470.

To refuse to consider or give any weight to this judgment seems to me prevented the trial court from getting the true picture of the relationship between this son and the mother. When the will was drawn in October, 1918, giving to the one son the entire principal of her estate, she did not then have this particular piece of city property. Evidently not satisfied with the gift by the will of this property to the exclusion of the four other children, this favored son obtains a present deed of this valuable piece of property, and when the validity of that transaction is challenged a judgment of a court declares that such deed is void. Notwithstanding that, he is now permitted, by the present disposition of this case, to take the same property by this will that it is solemnly adjudged he could not take by the deed.

A reading of the record in this case makes it impossible for me to reconcile myself with a conclusion that the will

executed under the circumstances here disclosed could be any more the free and independent act of this aged testatrix than was the deed to the same favored son executed less than two years thereafter. The circumstances in this case, in my judgment, placed a heavy burden upon the respondent in this case to establish that he did not take advantage of the evident influence he had over his mother in the making of these instruments, and that he has by no means met the burden so placed upon him and ought not to be permitted to profit, as he has been allowed to do by the judgment below and here.