**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mauro DELMENDO, Defendant-Appellant.**
**No. 73–2707.**

United States Court of Appeals,
Ninth Circuit.

Sept. 16, 1974.

Benjamin J. Cayetano, Honolulu, Hawaii, for defendant-appellant.

Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before HUFSTEDLER and GOODWIN, Circuit Judges, and SKOPIL, District Judge.*

## OPINION

HUFSTEDLER, Circuit Judge:

Delmendo appeals from a judgment denaturalizing him pursuant to 8 U.S.C. § 1451(d). The issue is whether the evidence supported the district court's determination that Delmendo lacked intention to reside permanently in the United States when he filed his petition for naturalization. We conclude that the evidence was insufficient and that the district court's contrary conclusion was based on a misapplication of 8 U.S.C. § 1451(d).

Under section 1451(d), proof that a naturalized citizen established a permanent residence abroad within five years from his naturalization is "considered prima facie evidence of a lack of intention on the part of such person to reside permanently in the United States at the time of filing his petition for naturalization . . . ." In absence of countervailing evidence, the prima facie evidence is "sufficient . . . to authorize . . . the cancellation of the certificate of naturalization as having been obtained by concealment of a material fact or by willful misrepresentation . . . ."

We are of the view that the evidence was inadequate to sustain a finding that Delmendo established a permanent residence abroad and that even if he did so, the countervailing evidence of his intent at the time of naturalization to reside permanently in the United States defeated the statutory presumption.

Delmendo reached Hawaii in 1946 from his native Philippines. He was steadily employed in Hawaii until 1953, when he visited the Philippines and married. He returned to Hawaii five months later, leaving his bride in the Philippines because he could not afford to bring her with him. (He did not revisit the Philippines until 1958, despite the fact that his wife had borne him a child in 1954.) When he returned to Hawaii, he promptly commenced naturalization proceedings. More than four years elapsed after he was naturalized and before he rejoined his wife and child in the Philippines. During all of those years he continuously resided and worked in Hawaii. His testimony revealed attachment to life in the United States.

Delmendo also testified that when he went to the Philippines in 1958, he intended to return to Hawaii, but extended illness left him without financial means to do so. He remained in the Philip-

---

* Honorable Otto Skopil, Jr., District of Oregon, sitting by designation.

pines for over three years, at which time he was informed by the Department of State that his three-year residence abroad automatically deprived him of American citizenship. He did not learn that the statute upon which that advice was predicated was declared unconstitutional until shortly before the proceedings that bring him here.[1]

We do not think that his years of residence in the Philippines, dependent as they were on his impoverishment, illness, and erroneous legal advice given him by the State Department, can be equated either with an intent to establish permanent residence in the Philippines or with an intent not to make the United States his permanent home when he applied for naturalization.[2]

Because proof was inadequate that Delmendo intended to establish permanent residence in the Philippines, the foundation for the statutory presumption was not laid. But, even if we assumed, *arguendo,* that he did establish permanent residence in the Philippines, the statutory presumption was overcome by the countervailing evidence. Although the constitutionality of the section 1451(d) presumption was upheld in the old case of Luria v. United States (1913) 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101, sustaining the presumption in a predecessor statute,[3] the Court noted the weakness of the presumption when the intervening time between naturalization and permanent residence abroad approaches five years. Under such circumstances, the presumption is so weak "as to require but slight countervailing evidence to overcome it." (*Id.* at 27, 34 S.Ct. at 15.) Applying this standard to our facts, we have no difficulty in concluding that the presumption was over-

come. The same conclusion was reached on similar facts in Perrone v. United States (3d Cir. 1928) 26 F.2d 213.

Reversed.

---

1. Act of June 27, 1952, ch. 3, § 352(a)(1), 66 Stat. 269. This section was held unconstitutional in Schneider v. Rusk (1964), 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218.

2. In reviewing denaturalization based on claims that naturalization was illegally or fraudulently obtained, we are not bound by the district court's findings even if they are

not clearly erroneous. (Bechtel v. United States (9th Cir. 1949), 176 F.2d 741, 744.)

3. Act of June 29, 1906, ch. 3592, § 15, 34 Stat. 601. Although we do not reach the constitutional issue, we note that the continued vitality of *Luria* is dubious in the light of Leary v. United States (1969), 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57.