UNITED STATES of America, Plaintiff-Appellee,

v.

Parviz BANAFSHE, Defendant-Appellant.

No. 78–2685.

United States Court of Appeals, Ninth Circuit.

April 10, 1980.

Carolyn M. Reynolds, Los Angeles, Cal., argued and on brief, for defendant-appellant.

Donald L. Ungar, Simmons & Ungar, San Francisco, Cal., argued and on brief, for plaintiff-appellee.

Before CHAMBERS and TANG, Circuit Judges, and CAMPBELL,[*] District Judge.

TANG, Circuit Judge:

Parviz Banafshe appeals the judgment of the district court revoking his naturalization as a citizen of the United States on the ground that, under 8 U.S.C. § 1451(a) and (d), he lacked the intent to reside permanently in the United States at the time he filed his petition for naturalization. Banafshe contends that the rebuttable presumption in § 1451(d) which presumes that persons who become permanent foreign residents within five years after naturalization lacked the intent to become permanent United States citizens at the time of their application, is unconstitutional. Banafshe further contends that, even if the presumption is constitutional, he produced sufficient evidence to rebut the presumption. We find that the presumption is not unconstitutional and was not rebutted by Banafshe, and affirm the judgment of the district court.

Banafshe, a native citizen of Iran, entered the United States as a visitor in 1963 when he was 21 years old. That same year, he married a United States citizen and adjusted his status to that of a permanent resident alien. The marriage ended by annulment within a year.

Banafshe continued to reside in the United States, and in 1969 filed a petition for naturalization. The petition was granted and Banafshe was admitted to citizenship in September 1969.

In June 1970, after giving up his apartment, selling his car, and terminating his job in the United States, Banafshe returned to Iran. He took up residence in Iran, married an Iranian citizen, acquired an interest in an apartment house, and established his own business.

In August 1976 the Government commenced proceedings to revoke Banafshe's naturalization on the ground that he obtained citizenship by concealing his intent to take up permanent residence in Iran, which is ground for revocation under 8 U.S.C. § 1451(a) and (d). At trial, the Government offered the affidavit of the American vice-consul in Tehran. The affidavit stated that Banafshe established a permanent residence in Iran in 1970. It further stated that:

> He owns no property in the U.S. and maintains no permanent residence but has an established business in Tehran, Iran, and owns ⅓ of a house in Tehran. He has no family ties in the U.S. but his entire family, including wife, are Iranian nationals living in Iran. Mr. Banafshe has not renounced his Iranian nationality.

Banafshe and two other witnesses testified on Banafshe's behalf. Banafshe testified that he returned to Iran in June 1970 to help his father's business because his father was ill. After six or seven months his father was able to work again, and Banafshe continued to help his father on a part-time basis until 1973. Although he had intended to return to the United States when his father recovered, he remained in Iran because he was offered a job with an exporting firm. Banafshe accepted the of-

---

[*] Honorable William J. Campbell, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

fer and established his own export agency in Tehran.

Banafshe also testified that he had intended to return to the United States within a year or two, after he completed some business transactions and saved some money. During the period after his return to Iran, Banafshe visited the United States twice for two short business trips, unaccompanied by family members. Although he had talked with friends about a possible permanent return to the United States, no actual arrangements were ever made.

Sheryl Blatt, a former fiancee of Banafshe, testified that she went to Tehran in July 1969 to meet his family and announce their official engagement. They had planned to live in Los Angeles after their marriage. She attended Banafshe's naturalization, but shortly thereafter they decided to end their engagement. When Banafshe left for Iran, he told her that he was going because his father was ill. Banafshe did not tell her how long he would be gone and whether he intended to come back.

Victor Ceren, a friend of Banafshe, testified that Banafshe had left some personal belongings with him when he left for Iran. Banafshe did not tell Ceren why he was leaving nor how long he would stay there, but indicated that he intended to return. During Banafshe's stay in Iran, Ceren and Banafshe exchanged letters in which Banafshe generally stated that he would be back as soon as he could and that he hoped to start a business when he returned. Banafshe never told Ceren that he had any specific intent or any specific plans to return.

The district court issued an order revoking Banafshe's naturalization, finding that Banafshe had failed to present sufficient countervailing evidence to overcome the statutory presumption establishing his lack of his intention to reside permanently in the United States at the time he filed his naturalization petition.

I

Under 8 U.S.C. § 1451(d):

(d) If a person who shall have been naturalized shall, within five years after such naturalization, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such person to reside permanently in the United States at the time of filing his petition for naturalization, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the revocation and setting aside of the order admitting such person to citizenship and the cancellation of the certificate of naturalization as having been obtained by concealment of a material fact or by willful misrepresentation, and such revocation and setting aside of the order admitting such person to citizenship and such canceling of certificate of naturalization shall be effective as of the original date of the order and certificate, respectively. The diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with statements of the names of those persons within their respective jurisdictions who have been so naturalized and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to revoke and set aside the order admitting to citizenship and to cancel the certificate of naturalization.

By introducing the affidavit of the vice-consul in Iran, the Government established that Banafshe became a permanent resident of Iran.[1] Having established this basic fact, it relied on the statutory presumption for prima facie evidence of Banafshe's lack of intent to become a permanent citizen when he applied for naturalization. Under the operation of the statute, Banafshe was then

---

1. Banafshe does not challenge the district court's finding that he established permanent residency in Iran.

# 1146

required to produce sufficient countervailing evidence to rebut this presumption. Banafshe contends that the statutory presumption is unconstitutional because it eliminates the Government's burden to prove its case by "clear, unequivocal and convincing evidence," citing *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943), and shifts the burden of proof upon him. We conclude, however, that § 1451(d) is a valid exercise of Congress' authority to enact rules of evidence and procedure.

In *Luria v. United States*, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101 (1913), the Supreme Court upheld the constitutionality of a predecessor statute that contained the rebuttable presumption now found in § 1451(d). The Court ruled that the provision prescribed a rule of evidence, not a substantive right. The provision did not prohibit the defendant from proving that his actual intention was to reside permanently in the United States, a matter of which the defendant possesses special knowledge. The court also indicated that the strength of the presumption varied depending on the length of the interval between naturalization and the commencement of permanent foreign residence. When the interval was short, the presumption yields a substantial and convincing explanation; when it approaches five years the presumption weakens to require only "slight" countervailing evidence. *Id.* at 27, 34 S.Ct. at 15.

We have found only one reported appellate case involving the § 1451(d) presumption. In *United States v. Delmendo*, 503 F.2d 98 (9th Cir. 1974), a defendant, whose naturalization was revoked, challenged the constitutionality of § 1451. Because the court found that the evidence was insufficient to prove that the defendant had become a permanent foreign resident, it did not have to reach the constitutional issue. In dicta, however, the court noted that the continuity vitality of *Luria* was dubious in light of *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). *Delmendo*, 503 F.2d at 100 n.3.

The analysis employed by the Supreme Court in *Vance v. Terrazas*, —— U.S. ——, 100 S.Ct. 540, 62 L.Ed.2d 461 (1980), however, eliminated any doubt about the validity of § 1451. *Terrazas* involved an interpretation of § 1481. Under § 1481(a)(2), a person who is a national of the United States shall lose his nationality by making an oath of allegiance to a foreign state. As construed by the Court, § 1481 required the Government to prove by the preponderance of the evidence, both a specific intent to renounce United States citizenship, and, aided by the statutory presumption, the voluntary commission of one of the expatriating acts described in § 1481(a).

Like Banafshe, Terrazas argued that the standard of proof should be the clear and convincing evidence standard employed by the court in earlier case, not a preponderance of the evidence standard. The Court held, however, that even though it had previously held that proof of a voluntary expatriating act should be by clear and convincing evidence, Congress remained free to supplant the Court's evidentiary standards because those standards were judge-made rules that were not rooted in the Constitution. As for Terrazas' contention that the use of the presumption was impermissible, the Court held Congress' use of a rebuttable presumption to establish the voluntariness of the expatriating act was a rational rule that balances the interest of the citizen in retaining citizenship and the interest of the Government in proving expatriating conduct.

In light of this, Banafshe errs in contending that Congress cannot supplant the evidentiary standard contained in § 1451 for the "clear and convincing" standard announced in *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943). The court expressly noted in *Terrazas* that *Schneiderman* was an expression of the Court's own preference for the appropriate standard of proof, and that Congress did not exceed its powers by substituting its own judgment about the proper standard. *Terrazas*, —— U.S. at ——, 100 S.Ct. at 548.

Likewise, Congress' decision to shift the burden on the defendant to produce countervailing evidence of an intent to reside permanently in the United States is rational. The presumption comes into play only after the Government has proven that the defendant established a permanent foreign residence within five years after naturalization. At that point, it is appropriate to require the defendant to produce evidence about his intent at the time of his naturalization petition, since proof of permanent foreign residence is itself substantial evidence of a fraudulent intent and the best source of the defendant's actual intent is the defendant himself. *Luria*, 231 U.S. at 25, 34 S.Ct. at 14. Any danger that the presumption is too broad is eliminated by *Luria*'s requirement that the strength of the presumption vary with length of time elapsed between naturalization and the establishment of foreign residence. We conclude that § 1451(d) is a rational exercise of Congressional judgment.

Banafshe contends that, even if § 1451(d) is constitutional, he presented sufficient countervailing evidence to overcome its presumption. We cannot agree. Because Banafshe commenced permanent residence in Iran nine months after his naturalization, the presumption remains strong. The countervailing evidence presented by Banafshe, as perceived by the district court, was slight and not convincing. The district court was particularly disturbed by Banafshe's reliance on hearsay testimony and the absence of documents supporting Banafshe's stay. Banafshe presented no documentation about his father's illness, and did not produce any letters between him and Ceren in which Banafshe purportedly expressed a desire to eventually return to the United States.

Even assuming that Banafshe initially returned to Iran to help his father,[2] Banafshe's explanation for his continued residence was unsatisfactory. All of Banafshe's activities in Iran—starting a family, getting a new job, purchasing an apartment—were entirely consistent with an intent to remain there permanently. Banafshe's reliance on Blatt's testimony to establish his state of mind when he left the United States was almost entirely discounted by the district court. Indeed, the district court drew the inference that Blatt had broken off her engagement with Banafshe because she did not want to live in Iran as a place of permanent residence. In short, a review of the evidence presented by Banafshe was inadequate to show that the finding of the district court that he failed to rebut the presumption in § 1451(d) is clearly erroneous.

The judgment of the district court is affirmed.

---

2. Upon cross-examination, Banafshe testified that he had two brothers and sisters already in Iran, and that his father had two business partners.