# SCHWIMMER v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit.
June 29, 1928.

No. 3997.

1. Aliens ☞68(1)—Applicant for citizenship had right to have her petition and evidence considered by court in accordance with settled rules of law.

Alien applicant for citizenship had right to submit her petition and evidence to the court, and to have it exercise its judicial judgment thereon in accordance with settled rules of law, to have court consider only evidence relative and material to issue, and to have that evidence given its probative force.

2. Aliens ☞68(6)—Mere views of alien applicant for citizenship are not alone ground for denying petition (Naturalization Act § 4(4); 8 USCA § 382).

Under provisions of Naturalization Act, § 4(4), 8 USCA § 382, requiring alien applicant for citizenship to show to the satisfaction of the court that he has behaved as a man of good moral character, attached to the principles of the Constitution, and well disposed to the good order and happiness of the same, during the period specified, views of applicant, expressed before or at the time of hearing on application, may be important, as disclosing whether his conduct was that required of applicants, but are not by statute a ground for denying petition.

3. Aliens ☞62(1)—Fifty year old woman, applicant for citizenship, held not disqualified because of her expressed unwillingness to personally bear arms in defense of United States (Naturalization Act, § 4(4); 8 USCA § 382).

Fifty year old woman, applicant for citizenship, otherwise qualified for citizenship, held not disqualified because of her expressed unwillingness personally to bear arms in defense of the United States, such views not making her conduct that of a person not attached to the principles of the Constitution, or not well disposed to the good order and happiness of the same, under Naturalization Act, § 4(4), 8 USCA § 382.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Petition by Rosika Schwimmer for admission to citizenship. From a decree denying petition, petitioner appeals. Reversed and remanded, with directions.

Olive H. Rabe, of Chicago, Ill., for appellant.

Fred J. Schlotfeldt, of Chicago, Ill., for the United States.

Before ALSCHULER and ANDERSON, Circuit Judges, and BALTZELL, District Judge.

ANDERSON, Circuit Judge. This is an appeal from a decree denying a petition for admission to citizenship. Appellant is a wo-

man 50 years of age. The case is here upon an agreed statement of facts, and the decree. Equity rule 77.

The statement of facts consists of the questionnaire submitted to appellant by the district director of naturalization, and her answers thereto; certain correspondence between her and the director; a condensed statement of her testimony at the hearing; and concludes thus:

"Formal proof as to residence, moral character and fitness for citizenship was given by the witnesses who verified the petition.

"It is agreed that the testimony at the hearing of the petition shows that the petitioner is qualified for citizenship except in so far as the views of the applicant set forth in the foregoing agreed statement of facts may show that the applicant is not attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same, and except in so far as the same may show that she cannot take the oath of allegiance without a mental reservation."

At the close of the hearing the District Court entered the following decree:

"And now again upon consideration of the petition of Rosika Schwimmer * * * it appearing that the said petitioner is not attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same, and further that she is unable to take the oath of allegiance prescribed by the Naturalization Law without a mental reservation, it is therefore ordered that the said petition be and is hereby denied."

The views of appellant relied upon to support the denial of her petition sufficiently appear in her answers to question 22 of the questionnaire, and her willingness to take the oath of allegiance, as shown in her answer to question 20. These questions and answers are as follows:

"20. Have you read the following oath of allegiance? Yes. 'I hereby declare on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty, and particularly to Hungary, of whom I have heretofore been a subject; that I will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic; and that I will bear true faith and allegiance to the same.'

"Are you willing to take this oath in becoming a citizen? Yes."

"22. If necessary, are you willing to take up arms in defense of this country? I would not take up arms personally."

When asked, upon the hearing, about her answer to question 22, and her expressed willingness to take the oath of allegiance, she said:

"I am able to take the oath of allegiance without any reservations. I am willing to do everything that an American citizen has to do, except fighting. If American women would be compelled to do that, I would not do that. I am an uncompromising pacifist. Asked how far does that go—if I disapprove of the government fighting, I answer, it means I disapprove of the government asking me to fight personally with my fists or carrying a gun. I do not care how many other women fight, because I consider it a question of conscience. I am not willing to bear arms. In every other single way I am ready to follow the law and do everything that the law compels American citizens to do. That is why I can take the oath of allegiance, because, as far as I can find out, there is nothing that I could be compelled to do that I cannot do. If it is a question of fighting, as much as I desire American citizenship, I would not seek the citizenship."

Appellant was examined at considerable length upon the hearing, but the above extracts furnish a fair expression of the views relied upon to support the decree. Her testimony, other than the expression of these views, shows an intelligent appreciation of the fundamental principles of the Constitution and her attachment to them, and that she is well disposed to the good order and happiness of the United States.

The fourth subdivision of the section of the Naturalization Law, prescribing what the applicant must show in order to be admitted reads:

"Fourth. It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States five years at least, and within the state or territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. In addition to the oath of the applicant, the testimony of at least two witnesses, citizens of the United States, as to the facts of residence, moral character, and attachment to the principles of the Constitution shall be required, and the name, place of residence, and occupation of each witness shall be set forth in the record." 8 USCA § 382.

The Supreme Court in Tutun v. United

States, 270 U. S. 568, 578, 46 S. Ct. 425, 427 (70 L. Ed. 738), said:

"The opportunity to become a citizen of the United States is said to be merely a privilege and not a right. It is true that the Constitution does not confer upon aliens the right to naturalization. But it authorizes Congress to establish a uniform rule therefor. Article 1, § 8, cl. 4. The opportunity having been conferred by the Naturalization Act [34 Stat. 596], there is a statutory right in the alien to submit his petition and evidence to a court, to have that tribunal pass upon them, and, if the requisite facts are established, to receive the certificate. See United States v. Shanahan [D. C.] 232 F. 169, 171. There is, of course, no 'right to naturalization unless all statutory requirements are complied with.' United States v. Ginsberg, 243 U. S. 472, 475 [37 S. Ct. 422, 61 L. Ed. 853]; Luria v. United States, 231 U. S. 9, 22 [34 S. Ct. 10, 58 L. Ed. 101]. The applicant for citizenship, like other suitors who institute proceedings in a court of justice to secure the determination of an asserted right, must allege in his petition the fulfillment of all conditions upon the existence of which the alleged right is made dependent; and he must establish these allegations by competent evidence to the satisfaction of the court. In re Bodek, 63 F. 813, 814, 815; In re an Alien, 7 Hill (N. Y.) 137. In passing upon the application the court exercises judicial judgment. It does not confer or withhold a favor."

[1] Appellant had the right to submit her petition and evidence to the court, and to have it exercise its judicial judgment thereon. She had a right to have the evidence, and the effect of it, weighed and considered in accordance with the settled rules of law; to have the court consider only evidence relative and material to the issue; and to have that evidence given its probative force.

[2] The question for judgment was, Did she make it appear that she had behaved, that is, conducted herself, as a person of good moral character, attached and disposed as the statute requires, during the time fixed by it? Assuming that the time to be covered by the inquiry ended with the hearing, her views, expressed then or before that time, might be important as disclosing whether her conduct was that required of applicants; but mere views are not, by the statute, made a ground for denying a petition.

[3] The views expressed by the applicant at most reveal an unwillingness personally to bear arms, and it being agreed that she has shown herself in every other way qualified for citizenship, unless her expressed unwill-

ingness to bear arms makes her conduct that of a person not attached to the principles of the Constitution of the United States, or not well disposed to the good order and happiness of the same, her petition should have been granted.

Vattell, in his Law of Nations, as quoted in appellee's brief, says:

"No person is naturally exempt from taking up arms in defense of the state—the obligation of every member of society being the same. Those alone are excepted, who are incapable of handling arms, or supporting the fatigues of war. This is the reason why old men, children and women are exempt."

We do not have before us the case of a male applicant for admission who is able to bear arms and is within the usual conscription age, but the case of a woman fifty years of age.

Women are considered incapable of bearing arms. Male persons of the age of appellant have not been compelled to do so. Appellant, if admitted, cannot by any present law of the United States be compelled to bear arms. Judging by all the conscription acts of which we have knowledge, she never will be required to do so; yet she is denied admission to citizenship because she says she will not fight with her fists or carry a gun.

In other words, there is put to her an hypothetical question—what would she do under circumstances that never have occurred and probably never will occur—and upon her answers to this supposed case her petition is denied. A petitioner's rights are not to be determined by putting conundrums to her.

The views of appellant relied upon to support the denial of her application have no substantial relation to the inquiry authorized by the statute. They were immaterial to that inquiry and do not furnish sufficient basis for the decree.

Reversed and remanded, with direction to grant appellant's petition.