59 F.2d 436 (1932)
In re SARALIEFF.
No. 21365.
District Court, E. D. Missouri, E. D.
April 1, 1932.
M. A. Sturges, District Director of Naturalization, and Walter L. Wolf, Asst. District Director of Naturalization, both of St. Louis, Mo., for the United States.
DAVIS, District Judge.
The statute, 8 USCA § 382 (as amended March 2, 1929), provides: "No alien shall be admitted to citizenship unless (1) immediately preceding the date of his petition the alien has resided continuously within the United States for at least five years and within the county where the petitioner resided at the time of filing his petition for at least six months, (2) he has resided continuously within the United States from the date of his petition up to the time of his admission to citizenship, and (3) during all the periods referred to in this section he has behaved as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."
The expression "well disposed" refers particularly to the mental attitude of the applicant, with intent to exclude from citizenship persons disbelieving in our form of government or hostile to it.
Attached to the principles of the Constitution means attachment to the principles of free government as exemplified in that instrument. "Attachment" is a stronger word than "well disposed," and implies a depth of conviction which would lead to an active support of the Constitution.
The oath prescribes that the applicant must pledge himself to support and defend the Constitution of the United States against all enemies, foreign and domestic.
The applicant here states that he is attached to the principles of the Constitution, and would only seek its change by way of amendment. This he advocates, and ardently desires.
What are the principles of the Constitution? They are in the main:
(1) A representative government, as distinguished from a democracy; that is, representative of all groups of citizens as distinguished from any particular class.
(2) A dual form of government, as distinguished from a single sovereign with the all-pervading authority therein inherent. This novel conception made the Union possible, and it has developed around this central idea.
(3) The distribution of governmental authority, not only between the states and the nation, but so much of authority as is committed to the nation is divided for its exercise among the three well-known departments of government, the executive, the legislative, and the judicial.
(4) The guaranty of individual liberty, through constitutional restrictions. This means generally the right of life, liberty, and private property. They are the rights inherent in the individual, and of them he cannot be deprived except by due process of law, with all that is included in that term.
These are the political conceptions to which an applicant for citizenship must establish *437 that for a definite period of time he has been "attached," and toward the political system built upon these principles that he is "well disposed."
What does the proof in this case show? That the applicant, not yet a citizen, is the editor of a newspaper printed in a foreign language, and through that publication and otherwise he advocates and ardently desires the amendment of the Constitution of the United States. There is, of course, nothing objectionable in a citizen seeking to amend the Constitution. That has been done nineteen times. But to what end does the applicant seek its amendment? To abolish the executive, the legislative, and the judicial departments as established, and to place all governmental authority in the hands of a particular group called the producers. To abolish private property and substitute therefor the ownership of all property by a communistic state.
What could be the effect of such an alteration of the Constitution?
(1) The thoroughly representative government provided by the Constitution becomes at most a government representative of a particular class.
(2) The dual sovereignty recognized by the Constitution becomes a relic of the past.
(3) The distribution of powers among the several branches of the government will no longer characterize the system.
(4) The principles of individual liberty under the law will have no place in the new regime.
Such a result as this is more than the amendment of the Constitution. It is nothing short of the destruction of the same. How an individual can seek this result and at the same time state that he is attached to the principles of government as they are disclosed in the Constitution, and will support and defend them against all enemies, foreign and domestic, is beyond comprehension. This is a result that cannot be accomplished by the orderly process of amendment. Its consummation is impossible, short of revolution.
No criticism is offered of the individual who entertains the views held by the applicant. That is his privilege. But the right to amend the Constitution, and to advocate its alteration, is a privilege of the citizen, and not of an alien. One who entertains the views expressed by the applicant is not "attached to the principles of the Constitution," and is not "well disposed" toward the same.
He is not "well disposed" because he is hostile to our form of government. He is not "attached to the principles of the Constitution" because there is lacking such a conviction as would lead him to actively support and defend the same.
Citizenship is available for aliens who in good faith, by example, and mental attitude disclose their sincere adherence to the political philosophy of the Constitution. Those who come in any other frame of mind are asking for a privilege that they have no right to receive. No matter how well founded their political beliefs may be, conformity to principles of the Constitution is indispensable.
The petition will be denied. To the ruling of the court the applicant is allowed an exception.