**In re WARKENTIN.**

**WARKENTIN v. SCHLOTFELDT, District Director of Immigration and Naturalization.**

No. 6329.

Circuit Court of Appeals, Seventh Circuit.
Dec. 7, 1937.

Rehearing Denied Dec. 22, 1937.

Charles P. Schwartz, of Chicago, Ill., for appellant.

Michael L. Igoe, U. S. Atty., and A. Bradley Eben, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before EVANS, Circuit Judge, and LINDLEY and BALTZELL, District Judges.

LINDLEY, District Judge.

Petitioner asserts error in an order of the District Court denying his petition for

naturalization. The action of the court was grounded upon the fact that petitioner, a member of the Mennonite Church, deeming its creed inconsistent with physical violence, testified that he was not willing to take up arms in defense of his country. This was because, among other declarations in the Mennonite articles of faith, it is prescribed that: "We dare not use any sword or other weapon of defense against our enemies." This position of the petitioner, the trial court believed, constituted a failure to comply with a statutory prerequisite to admission to citizenship, made mandatory by the acts of Congress, and particularly by that part of the oath of allegiance which provides that an applicant for naturalization shall swear or affirm that "he will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to the same."

Petitioner insists that the denial of his application deprives him of his liberty and of his opportunity to practice his profession as a minister of the gospel, in violation of Amendment 5 of the Constitution; that it imposes an unconstitutional condition upon the right of admission to citizenship; and that the law does not make the petitioner's willingness to bear arms a prerequisite to allowance of naturalization.

Upon oral argument, petitioner frankly admitted that under the existing Supreme Court decisions, he could not here challenge the power of Congress to prescribe as a condition precedent to citizenship that he be willing to bear arms in defense of his country. But counsel contended further that neither the law nor the clauses hereinbefore quoted, included in the oath of allegiance, implied that Congress intended to impose as a condition prerequisite to petitioner's naturalization that he affirm his willingness to bear arms.

Consequently, the essential question presented to us is as to the correctness of the decision of the District Court that the words quoted impose this obligation as a condition to allowance of his application. To our mind this question is fully adjudicated by decisions of the Supreme Court. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; Zartarian v. Billings, 204 U.S. 170, 27 S.Ct. 182, 51 L. Ed. 428; Luria v. United States, 231 U.S.

9, 34 S.Ct. 10, 58 L.Ed. 101; Section 372, title 8, United States Code (8 U.S.C.A. § 372). By these authoritative announcements of the law, it is settled that the nation, as an inherent part of its sovereignty, is clothed with the power to prescribe who may be admitted to citizenship and under what condition that admission may be allowed, and that the exercise of such power confers no right upon an applicant, but extends to him a privilege by virtue of which he may be naturalized, provided he complies with the conditions prescribed by the Congress. Extending this thought, the Supreme Court announced in United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 575, 75 L.Ed. 1302, that until the applicant complies with the conditions, he may not enjoy the privilege. There the narrow specific question now submitted to us as to the interpretation of the obligation of the petitioner to affirm or swear that he will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, was fully considered. The court concluded that the applicant was rightfully denied citizenship because he was unwilling to promise to bear arms if Congress should so direct.

The petitioner insists that that case is to be distinguished from the one here presented, in that the specific refusal to bear arms appearing in the present record was not there submitted to the court. But an examination of the facts of that case discloses that the question determined was even broader than that presented to us. There the applicant was willing to take the oath, and so stated in his petition, but he explained that he was not willing to promise beforehand to take up arms without knowing the cause for which his country might go to war, and that he would have to believe that the war was morally justified. Mr. Justice Sutherland, speaking for the court, said: "When he speaks of putting his allegiance to the will of God above his allegiance to the government, it is evident, in the light of his entire statement, that he means to make his own interpretation of the will of God the decisive test which shall conclude the government and stay its hand. We are a Christian people (Rector, etc., of Holy Trinity Church v. United States, 143 U.S. 457, 470, 471, 12 S.Ct. 511, 36 L.Ed. 226), according to one another the equal right of religious freedom, and acknowledging with reverence the duty of obedience to the will of God. But, also, we are a nation with

the duty to survive; a nation whose Constitution contemplates war as well as peace; whose government must go forward upon the assumption, and safely can proceed upon no other, that unqualified allegiance to the nation and submission and obedience to the laws of the land, as well those made for war as those made for peace, are not inconsistent with the will of God." The present applicant was not willing to promise to bear arms under any conditions; the applicant there was unwilling to bear arms in such cases as he, from his moral standpoint, deemed it improper to do so.

In the earlier case of U. S. v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 450, 73 L. Ed. 889, the court said: "That it is the duty of citizens by force of arms to defend our government against all enemies whenever necessity arises is a fundamental principle of the Constitution. * * * Whatever tends to lessen the willingness of citizens to discharge their duty to bear arms in the country's defense detracts from the strength and safety of the government. And their opinions and beliefs as well as their behavior indicating a disposition to hinder in the performance of that duty are subjects of inquiry under the statutory provisions governing naturalization and are of vital importance, for if all or a large number of citizens oppose such defense the 'good order and happiness' of the United States cannot long endure."

These decisions control us here. Maney v. United States, supra; Zartarian v. Billings, supra; Hamilton v. Regents of University of Cal., 293 U.S. 245, 55 S.Ct. 197, 79 L.Ed. 343. Whatever might be our inclination, were the question open to us, is wholly beside the point. The settled conviction of this court upon the same issue as expressed in Schwimmer v. United States, 27 F.2d 742 (C.C.A.), was disapproved and the decision reversed by the Supreme Court in its review, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889. We are foreclosed from any contrary ruling.

We have had the benefit of an enlightening discussion of the history of the oath of allegiance and its development under Anglo-Saxon institutions and in the genesis and progressive movement of this nation, but nothing therein included can avoid the precise adjudication by the Supreme Court of the proposition that the law prescribes as a condition precedent to granting of citizenship that the applicant be willing to bear arms, when Congress acts in pursuance of its constitutional power to declare war.

It is said that to deny the petitioner's application is to deprive him of his vocation as a minister. The obvious reply is that, inasmuch as the admission to citizenship is a privilege, the applicant is free to make his application or to desist from so doing as he may wish; but further, that if he desires to enjoy the privilege, he must comply with the conditions prerequisite thereto.

The order of the District Court is affirmed.