**In re Folmer Forsom HANSEN, Petitioner.**
**No. 11253.**

United States District Court
D. Minnesota, Third Division.
Feb. 8, 1957.

Robert A. Carlson, St. Paul, Minn., Examiner Immigration & Naturalization Service.

Folmer F. Hansen, petitioner pro se.

DEVITT, District Judge.

Hansen, the petitioner, a native and subject of Denmark, seeks naturalization as a United States citizen. He has lived in this country for 30 years. He is in all respects qualified for American citizenship. He declines to take that part of the oath of allegiance which requires him to perform military service on behalf of the United States. He claims that the law exempts him from this requirement because he is a conscientious objector.

The Naturalization Examiner claims that petitioner is not exempt from that requirement, and has recommended that the petition for naturalization be denied.

The issue is as to the proper interpretation of 8 U.S.C.A. § 1448(a) and particularly as to the meaning of the term "religious training and belief" as used therein. Hansen claims that, as the possessor of religious training and belief in opposition to military service, he is exempt from taking that part of the oath requiring such service.

The matter reaches the Court as a de novo proceeding. The Naturalization Examiner held a hearing on May 14, 1956, at which time the petitioner was examined with regard to the basis of his claimed exemption from military service.

On December 19, 1956, a hearing was held in open court. The petitioner was present and represented himself. The Court inquired if the petitioner desired a full and formal hearing as is provided for in 8 U.S.C.A. § 1447(b). He said he did not. He stated that he did not choose to engage counsel to represent him.

The Court's findings and conclusions herein are based upon the testimony of Hansen before the Examiner, several written statements of the petitioner submitted to the Court, and upon statements made by Hansen in response to questions by the Court. Petitioner has agreed that the Court shall make a final determination on this basis. The Examiner has filed a brief.

The law governing the oath to be taken by applicants for naturalization is contained in 8 U.S.C.A. § 1448(a), the same being § 337(a) of the Immigration & Nationality Act of 1952. This statute requires that a person who has petitioned for naturalization shall, before being admitted to citizenship, take in open court an oath (1) to support the Constitution of the United States, (2) to renounce all allegiance to the country of which he has been a citizen, (3) to support and defend the Constitution and laws of the United States against all enemies, (4) to bear true faith and allegiance to the same, and (5) (A) to bear arms in behalf of the United States when required by the law, or (B) to perform non-combatant service in the armed forces of the United States when required by the law, or (C) to perform work of national importance under civilian direction when required by the law.

Thus, it is clear that an applicant for citizenship, in order to be admitted, must take an oath to perform military service as specifically required by subsection (5).

Certain exemptions are set out in remaining portions of § 1448(a). Hansen seeks the exemption provided by that part of the statute which provides that:

"* * * A person who shows by clear and convincing evidence to the satisfaction of the naturalization court that he is opposed to any type of service in the Armed Forces of the United States by reason of religious training and belief shall be required to take an oath containing the substance of said clauses (1)– (4), and (5)(C)."

The term "religious training and belief" is specifically defined in the law to mean:

"* * * an individual's belief in a relation to a Supreme Being

involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

The specific issue, therefore, is whether or not Hansen's "religious training and belief" comes within the Congressionally defined term in order to exempt him from the oath to perform military service required by Sections 5(A) and 5(B).

An examination of Hansen's background and stated beliefs reflects that he is 59 years of age and has lived in the United States since his legal entry on November 15, 1926. He was born in Denmark and became a member of the State Lutheran Church there. His father, an instructor at a State Normal School, was a deeply religious man and conducted family devotions in which petitioner participated. Beginning at about the age of 12, petitioner came under the influence of certain agnostic or atheistic teachers who allegedly alienated him for a time from the strong Christian beliefs instilled in him in his home environment. There followed a period of disturbed mental conflict between Christianity and agnosticism. When he reached adulthood, petitioner became strongly reconciled to his childhood faith and at this time first expressed an objection to military service.

Petitioner served in the armed forces of Denmark. While in training in the use of the bayonet, he felt a violent emotional objection to wartime killing, and was transferred to the health or sanitary troops in the Danish Service.

Since adulthood, Hansen has been a deeply religious person. He states that his opposition to military service is—

"* * * caused by a feeling of duty toward 'neighbor'—a regard toward neighbor which is tied to my relation to God. * * * I believe that God is the source and cause of my opposition. It is my will to do God's will, and my conscience before God restrains me from being a party to war."

Petitioner registered for military service in this country in World War II. At that time he stated that he was a conscientious objector against taking arms. Petitioner has a wife and one son, aged 18. Both are United States citizens. His son has registered for the draft. He is not a conscientious objector. Hansen is now a member of the Evangelical Lutheran Church. It is not contended that the tenets of this church oppose service of its members in the armed forces.

On the basis of the evidence before me, it is clear that petitioner's beliefs opposing service in the armed forces have a sincere and devout religious basis. To qualify under the statute, a petitioner's beliefs must be in relation to a Supreme Being involving duties superior to those arising out of any human relation, but does not include "* * * essentially political, sociological, or philosophical views or a merely personal moral code." Hansen's belief in nonparticipation in war is directly related to the teachings of Christ. There is no indication here that his views are political, sociological of philosophical in the sense that those terms imply a lack of Divine or Scriptural inspiration. Hansen has admitted that he was guided in this matter by a personal code, but a personal religious code, not a moral code unrelated to a Supreme Being.

The Naturalization Examiner does not question the sincerity and religious nature of petitioner's belief. He does contend, however, that § 1448(a) requires that a person must show that his basis for a refusal to subscribe to the full oath is based on both religious training *and* religious belief. It is urged that the statute contemplates exemption only for one who is able to show that his religious belief opposing military service was obtained directly from his religious training. The Naturalization Examiner states "[Hansen's] religious training

was not in any way opposed to military service and his belief, while indicating a steadfast one, is not in harmony with his religious training".

It may well be questioned whether the use of the term "religious training and belief" was meant to imply that "training" and "belief" are separate items, both requiring proof. Once the religious nature of the belief is established, however, it must be assumed that at least some religious instruction, formal or informal, preceded it. Without a knowledge of the Christian tenets, it is absurd to say that an individual can believe that those tenets forbid him to conscientiously bear arms or otherwise perform military service.

I do not believe it to be within my power, even were I so inclined, to give separate meaning and to require separate proof for the "training" and the "belief" set out in the statute since the Congress, in § 1448(a) has specifically defined the phrase "religious training and belief" as:

> "* * * An individual's *belief* in relation to a Supreme Being involving duties superior to those arising from any human relation, * * *" (emphasis added.)

Thus, it may be observed that no attempt is made in the statute to define "training" and "belief" as separate elements. The phrase is defined in toto as a single concept, and to attempt an independent consideration of the word "training" would be to ignore the apparent scheme of the statute.

Only one case has come to my attention in which a court has reasoned otherwise, and that apparently obiter. Berman v. United States, 9 Cir., 156 F.2d 377, certiorari denied 329 U.S. 795, 67 S.Ct. 480, 91 L.Ed. 680, rehearing denied 329 U.S. 833, 67 S.Ct. 621, 91 L.Ed. 706. The court said 156 F.2d at page 382:

> "We have not referred specifically to the requirement that before one comes within the exemption provided in the Act, he must be opposed to war not only by reason of his religious belief but by reason of *religious training*. The record is as silent on religious training as the basis of appellant's claimed conscientious objections, as it is on a religious belief as the basis of his conscientious objections."

The Berman case arose under § 5(g) of the Selective Training and Service Act of 1940. Berman claimed exemption from military service as a conscientious objector on the grounds of "religious training and belief." Although this phrase is identical with that appearing in § 1448(a) noted above, the Selective Service Act at that time contained no statutory definition of "religious training and belief." The present Universal Military Training and Service Act of 1948, § 6(j), 50 U.S.C.A.Appendix, § 456(j), enacted since the Berman case, contains the identical statutory definition of that phrase as is contained in 8 U.S.C.A. § 1448(a) of the Immigration Act. Unlike the Berman case we are faced here with a statute in which Congress has specifically defined the term used, and has thus limited the permissible bounds of judicial statutory interpretation.

Recently one of my colleagues in the District of Massachusetts, Judge Aldrich, had occasion to consider an issue similar to the one before us. See In re Nissen, D.C.D.Mass., 138 F.Supp. 483, 484, and 146 F.Supp. 361. The facts of that case are strikingly similar to this one. Petitioner was a Lutheran minister who admitted that his belief opposing the bearing of arms was "his 'own belief rather than the doctrine of the church'." In his first decision on December 14, 1955, 138 F.Supp. 483, Judge Aldrich denied Nissen's petition because of the absence of evidence specifically showing the religious "training" to support the religious "belief."

In that case, however, the court was concerned with the predecessor statute to the present section 1448(a) which did

not contain a Congressional definition of "religious training and belief." I note in the current advance sheet, 146 F.Supp. 361, that Judge Aldrich has granted a motion for reconsideration and, in the course of the memorandum allowing it, after reviewing the legislative history and prior decisions, has concluded that "training" plays a very minor role in the scheme of the statute even as it existed prior to 1952. Judge Aldrich says:

> " * * * it seems reasonable to conclude that so far as Congress was thinking of training it regarded it as meaning no more than individual experience supporting belief; a mere background against which sincerity could be tested." 146 F.Supp. at page 363.

This expression by Judge Aldrich appears to be a harbinger of a conclusion that a separate showing of religious training is not essential to satisfy the exemption permitted by the predecessor statute to the present § 1448(a).

It seems to me that to ascribe any more meaning to "training" than is already contained in the statutory definition would be to permit only those who are members of religious sects which are doctrinarily opposed to war to claim the exemption from the full oath required by the statute. It is quite clear that when Congress employed the term "religious training and belief" it did not contemplate only members of those religious groups. United States v. Kauten, 2 Cir., 133 F.2d 703, 708; United States, ex rel. Phillips v. Downer, 2 Cir., 135 F.2d 521, 524. If such were the case, I would find myself in the untenable position of denying citizenship *because* the petitioner is a Lutheran despite the fact that his beliefs opposing war may well be as devout as those of the Jehovah's Witnesses or the Mennonites. See United States v. Evengram, D.C.S.D.W.Va., 102 F.Supp. 128.

I conclude that "religious training and belief" as used in the statute is a single concept and not properly severable. The petitioner need only show that his beliefs are " * * * in relation to a Supreme Being involving duties superior to those arising from any human relation * * *".

I have closely observed petitioner and have carefully read and considered his statements of religious belief. I am convinced that he is sincere. He has satisfied me by clear and convincing evidence that his opposition to service in the armed forces is based on religious training and belief.

The Court is prompted to make one additional observation. This case does not present the problem often encountered under the draft laws where there may be compelling reasons to question the sincerity of one who claims exemption from the operation of the law by reason of religious training and belief. This petitioner is a mature, intelligent man of 59 years, who has lived in this country for most of his adult life. His family are United States citizens. While possible, it is highly improbable that he will ever be subject to military service. If the petitioner were less courageous, he might well have found it more practical and less precarious (albeit criminal and hypocritical) to subscribe to the entire oath of allegiance with "tongue in cheek." Instead, without regard for the possible consequences, he chose to be completely frank and honest. In so doing, he put his chances for citizenship in the balance. The uncertain posture in which Hansen thus placed himself affords the strongest credibility to his statements.

I conclude that petitioner's claim for exemption from taking the oath of allegiance containing clauses 5(A) and 5(B) is well founded and is based on religious training and belief within the meaning of 8 U.S.C.A. § 1448(a). The petition is granted and the Court will administer the oath with a deletion of those clauses.