In re Petition for Naturalization of
Haesoon Kook MATZ.

In re Petition for Naturalization of
Renate Maria Louise NIKOLA.

Petition Nos. 16789, 16110.

United States District Court
E. D. California.

Jan. 28, 1969.

John J. Wells, Sacramento, Cal., for Haesoon Kook Matz.

No appearance for Renate Maria Louise Nikola.

B. H. Simpson, Gen. Atty., U. S. Immigration and Naturalization Service, Sacramento, Cal., for the Government.

### MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

Petitioners are applicants to become naturalized citizens of the United States. They originally appeared before this court on June 21, 1967, for a final hearing on their petitions for naturalization at which time the matter was continued for further preliminary examination regarding petitioners' ability to take the oath of allegiance. They again appeared before me on December 2, 1968, for final hearing on their petitions. This court's jurisdiction to naturalize is granted by 8 U.S.C.A. § 1421.

At the outset I want to indicate that there is no duty of this office that I look upon with more gravity than passing upon petitions for naturalization. "[I]t is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to exaggerate its value and importance. By many it is regarded as the highest hope of civilized men." [1] That is as true today as it was when written a quarter-century ago. Thus, "the determination of the right to admission to citizenship is one of the most solemn and important functions of the United States District Court." [2] I have concluded that these petitioners have not met the qualifications for naturalization and that their applications must therefore be denied.

1. Schneiderman v. United States, 320 U.S. 118, 122, 63 S.Ct. 1333, 1335, 87 L.Ed. 1796 (1943).

2. Weber v. United States, 119 F.2d 932, 934 (9th Cir. 1941).

Petitioner Nikola, a native of Germany and presently a stateless female, age 25, entered the United States for lawful permanent residence April 14, 1950, and has resided in the United States continuously since that date. She filed her petition for naturalization in this court on March 29, 1966.

Petitioner Matz, a native and national of Korea, female, age 35, entered the United States for lawful permanent residence May 4, 1956, and except for a brief absence in 1963 has resided in the United States continuously since that date. She filed her petition for naturalization in this court on January 12, 1967.

Both petitioners belong to the religious denomination known as Jehovah's Witnesses and personally subscribe to its beliefs. Because of their religious training and belief, neither petitioner is willing to take the portion of the oath regarding bearing arms or doing noncombatant service. Matz is willing to take the portion of the oath promising to do work of national importance under civilian direction providing such work does not directly or indirectly support a war effort. Nikola is willing to take the portion of the oath promising to do work of national importance under civilian direction providing such work does not directly or indirectly support a war effort, or interfere with "God's work." Because of their religious training and belief, neither petitioner is willing to vote, serve on a jury, or participate in governmental functions.[3]

These cases present two legal questions: (1) Is a person, otherwise qualified for citizenship, who because of religious training and belief refuses to vote, serve on juries or otherwise participate in government, entitled to be naturalized? (2) Is a person who is willing to take an oath promising to do work of national importance under civilian direction when required by law, but only if such work is in their judgment not inconsistent with their religious beliefs, entitled to be naturalized?

## ATTACHMENT TO THE CONSTITUTION

■ Congress has provided that "no person * * * shall be naturalized unless such petitioner * * * is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C.A. § 1427 (1952). I hold that a person who because of religious training and belief, refuses to vote, serve on juries or otherwise participate in government is not attached to the principles of the Constitution of the United States in the sense intended by Congress as a prerequisite to naturalization.

■■ While I have been unable to find a case passing on this precise question, there are some general statements which can serve as a basis for more refined analysis. First, it is settled that the granting of citizenship is a privilege, and the burden is on the applicant to show his eligibility in every respect. Berenyi v. District Director, Immigration and Naturalization Service, 385 U.S. 630, 636–637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967). The Supreme Court has said that attachment to the Constitution includes allegiance to "those political and legal institutions that are the enduring features of American political society." Baumgartner v. United States, 322 U.S. 665, 673, 64 S.Ct. 1240, 1244, 88 L.Ed. 1525 (1944). A republican form of government is a cornerstone of our Constitutional scheme,[4] and candidates for natu-

---

3. At the hearing Mrs. Matz testified that her attitude was based on the religious teaching that one should not judge his fellow man. She could, therefore, vote on issues such as propositions and possibly hold appointive office. Mrs. Nikola based her attitude upon the fact that while on earth, Jesus Christ had noth-

ing to do with secular governments. She wished to follow his example. For the purposes of this case, I do not find this distinction significant.

4. It is so important that the Constitution requires the federal government to guarantee a republican form of government for the states. Art. IV, § 4.

ralization must be attached to the principle of representative government.[5]

■ It is theoretically possible to believe in representative government and at the same time abjure all responsibility of participation. But I do not believe that Congress intended to grant citizenship to those unwilling to assume the responsibilities of citizenship, no matter how fervent their abstract beliefs.[6]

■ It is no answer to point out that natural-born citizens are not required to vote. Although we must accept our natural-born citizens as we find them,[7] we can scrupulously select those aliens upon whom to confer the privilege of United States citizenship. More is demanded of an alien than a native-born citizen.[8] Indeed none of the statutory requirements for naturalization need concern the natural-born citizen. Consequently, the statutory requirements for naturalization cannot be construed by analogy to the legal duties of the natural-born citizen.[9]

There has been a growing awareness and much agitation in recent years over the voting *rights* of citizens. A cornucopia of recent Supreme Court decisions and Congressional legislation has safeguarded the citizen's voting rights and reshaped the electoral process. And the revolution is not yet over. This is as it should be. The franchise is "a fundamental political right, because preservative of all rights." [10] However, except for the usual hollow aphorisms on election day, almost nothing is heard about the citizen's correlative duty to exercise this right responsibly and intelligently. One of the greatest advocates ever to practice before the Supreme Court, John W. Davis,[11] said, "The Constitution has but two enemies * * * ignorance * * * and * * * indifference— the sort of indifference which leads many people, otherwise well enough behaved, to ignore both the rights and duties of citizenship."

A similar argument could be made with respect to petitioners' refusal to accept jury duty. The Supreme Court has recently held that trial by jury is so fundamental to the American scheme of justice that the fourteenth amendment requires the states to provide jury trials for all serious offenses. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). While no law compels us to vote, an eligible citizen has a legal duty to serve as a juror when called

---

5. Schneiderman v. United States, 320 U.S. 118, 181, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943) (dissent of Chief Justice Stone); Stasiukevich v. Nicolls, 168 F. 2d 474 (1st Cir. 1948); In re Saralieff, 59 F.2d 436, 437 (E.D.Mo.1932).

6. In Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 13, 58 L.Ed. 101 (1913), the Court stated that the naturalization requirements

   plainly contemplated that the applicant, if admitted, should be a citizen in fact as well as in name,—that he should assume and bear the obligations and duties of that status as well as enjoy its rights and privileges. In other words, it was contemplated that his admission should be mutually beneficial to the government and himself, the proof in respect of his established residence, moral character, and attachment to the principles of the Constitution being exacted because of what they promised for the future, rather than for what they told of the past. (231 U.S. at 23, 34 S.Ct. at 13.)

   *See also* In re Van Laeken, 22 F.Supp. 145 (N.D.Cal.1938); In re Saralieff, 59 F.2d 436, 437 (E.D.Mo.1932); In re Shanin, 278 F. 739 (D.Mass.1922).

7. One cannot lose his United States citizenship without his own assent. Afroyim v. Rusk, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967).

8. United States v. Bergmann, 47 F.Supp. 765, 766 (S.D.Cal.1942).

9. Ironically, in this era of unprecedented contempt for America by some of our own countrymen, many naturalized citizens become better citizens than those naturally born. They are able to compare the bounty of American life and the privileges of American citizenship with their previous homeland, and they understand that in spite of our problems the value of American citizenship is second to none.

10. Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

11. He was also the Democratic nominee for the Presidency in 1924.

and can only be excused by the judge pursuant to statute.[12] Jury service is therefore an essential duty of citizenship which these petitioners are unwilling to undertake. Thus, they cannot be said to be attached to the principles of the Constitution in the sense required by law. I must conclude that those who declare that they are unwilling to perform basic duties of citizenship—voting and serving on juries—do not meet the statutory requirements and are not eligible for naturalization.[13]

## CONSTITUTIONAL LIMITATIONS

Petitioners' refusal to vote and serve on juries is based upon religious training and belief. It is therefore necessary to consider whether the construction I have placed upon the naturalization requirements is constitutionally permissible. I conclude that it is.

The Constitution gives Congress the power "to establish an uniform Rule of Naturalization." [14] The first amendment, however, prevents Congress from making a law prohibiting the free exercise of religion. Petitioners' argument in this case would be that denying them citizenship because of their opposition to active political participation arising solely from religious training and belief impermissibly inhibits their free exercise of religion.[15]

The threshold question is whether there is any constitutional limitation on Congress' power to prescribe naturalization requirements. This has never been directly decided. Calling naturalization an inherent part of sovereignty,[16] a gift,[17] or a privilege,[18] most courts have declared that Congress can grant or withhold citizenship on whatever terms it chooses. Using this language to reject due process [19] and equal protection [20] arguments shows at the least a lack of concern about possible constitutional limitations on the congressional power to enact naturalization laws.[21] Although I can think of no good reason why the limitations in the Bill of Rights should be any less applicable to the naturalization power than they are to other express powers of Congress,[22] I need not reach that question. I assume without deciding that the first amendment imposes some limit which Congress and the courts may not exceed in prescribing naturalization requirements.

Although there is an absolute prohibition against the infringement of religious beliefs,[23] it has never been sup-

12. *See e.g.*, 28 U.S.C.A. §§ 1861–1863; Calif.Code of Civil Procedure §§ 198–201.

13. It should be emphasized that I am not applying my own subjective standard as to who would make a good citizen. It is for Congress to provide that standard. *See* Sittler v. United States, 316 F.2d 312, 324 (2d Cir. 1963).

14. Art. I, § 8.

15. Perhaps a more sophisticated formulation of the argument might be that these petitioners are as attached to the Constitution as their religious beliefs allow and that since they are at least theoretically attached to the Constitution, that is all Congress can constitutionally require.

16. In re Warkentin, 93 F.2d 42 (7th Cir. 1937), *cert. denied*, 304 U.S. 563, 58 S.Ct. 943, 82 L.Ed. 1529 (1938); United States v. Tapolcsanyi, 40 F.2d 255, 257 (3d Cir. 1930).

17. Turlej v. United States, 31 F.2d 696 (8th Cir. 1929); In re Dobric's Petition for Naturalization, 189 F.Supp. 638 (D. Minn.1960).

18. Jubran v. United States, 255 F.2d 81 (5th Cir. 1958); Benzian v. Godwin, 168 F.2d 952 (2d Cir.), *cert. denied*, 355 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425 (1948).

19. In re Warkentin, *supra;* Benzian v. Godwin, *supra.*

20. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931).

21. Note, Constitutional Limitations on the Power of Congress to Confer Citizenship by Naturalization, 50 Iowa Law Review, 1093, 1097 (1965).

22. For an excellent discussion of this entire problem, see Note, Constitutional Limitations on the Power of Congress to Confer Citizenship by Naturalization, 50 Iowa Law Review 1093–1113 (1965).

23. Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

posed that the first amendment impregnably shields conduct resulting from such beliefs against government regulation.[24] The Supreme Court indicated the proper test to resolve conflicts between the free exercise clause and regulations of conduct in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The Court there faced a conflict between the South Carolina unemployment compensation law, which would have required appellant to accept work on Saturday in order to receive benefits, and appellant's religious beliefs, which precluded her working on Saturday, her Sabbath. After first finding that the denial of compensation benefits clearly constituted a burden on the free exercise of appellant's religion, the Court then stated that it must " * * * consider whether some compelling state interest * * * justifies the substantial infringement of appellant's First Amendment right." 374 U.S. at 406, 83 S.Ct. at 1795. The Court then emphasized the necessary importance of the state interest:

> It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation. [Citation]' (374 U.S. at 406, 83 S.Ct. at 1795).

The Court held that the state interest was not sufficient in that case to outweigh first amendment rights.

■ On the basis of *Sherbert*, I am impelled to conclude that denying petitioners naturalization because of their religious beliefs does constitute a burden on the free exercise of their religion. However, the people (through Congress) have a "paramount interest" in insuring selection of future citizens with political credos compatible with government "of the people by the people and for the people." With all due respect for the importance of the free exercise clause, I find that the right of the people to select only those most suitable for the privilege of citizenship outweighs the claim of these aliens to citizenship in spite of their religious beliefs.[25]

## RESERVATIONS TO THE OATH

An additional defect in petitioners' case for naturalization is their reservations about the oath. Pursuant to 8 U.S.C.A. § 1448(a) (1952), 8 C.F.R. § 337.1 (1968) provides that before being admitted to citizenship, applicants for naturalization must take the following oath (as amended to accommodate conscientious objection to service in the armed forces):

> I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty, of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I will perform work of national importance under civilian direction when required by the law; and that I take this obligation freely without any mental reservation or purpose of evasion; so help me God.

Petitioners are willing to take the oath but have indicated that they will do the civilian work required only when, in their sole judgment, the work is consistent with their religious beliefs. I hold that such a proviso is sufficient mental reservation to be inconsistent with the required oath, thereby precluding naturalization.

24. *See* Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1960); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878).

25. The fundamental importance of the qualifications imposed has been amply demonstrated by the prior discussion in this opinion.

■■ This court has power as part of its jurisdiction to naturalize to determine whether applicants can take the required oath in good faith.[26] It was not too long ago that all conscientious objectors were precluded from becoming naturalized.[27] After some prodding by the Supreme Court,[28] Congress amended the law in 1952 to permit naturalization of even those unwilling to perform noncombatant service in the armed forces.[29] The present requirement of "work of national importance under civilian direction" is sufficiently tolerant toward conscientious objectors that it must be strictly adhered to.[30] I have had the unpleasant task of sentencing young male Jehovah's Witnesses to prison for failure to heed draft board orders to report for just such civilian work contemplated by the naturalization oath. Their reason for refusing was that the order came from a draft board. These petitioners testified that they too would be unwilling to obey orders by a draft board. The naturalization oath must be construed in pari materia with selective service law.[31] I am compelled to conclude, therefore, that these petitioners are unable to take the oath in good faith, and on that further ground they are not entitled to be naturalized.[32]

It is therefore ordered that the Petitions for Naturalization of Haesoon Kook Matz and Renate Maria Louise Nikola be, and the same are, hereby denied.

---

26. *United States v. Macintosh*, 283 U.S. 605, 616, 51 S.Ct. 570, 75 L.Ed. 1302 (1931) ; Petition of Scaccio, 131 F.Supp. 154 (N.D.Cal.1955), *rev'd on other grounds*, 235 F.2d 782 (9th Cir. 1956).

27. *See e.g.*, United States v. Bland, 283 U.S. 636, 51 S.Ct. 569, 75 L.Ed. 1319 (1931); United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931).

28. See Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084 (1946).

29. The amended law, 66 Stat. 258 (1952), precisely coincided with the Supreme Court's interpretation of the old statute in *Girouard, supra* note 28.

30. In United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889 (1929), the Supreme Court said
   And when, upon a fair consideration of the evidence adduced upon an application for citizenship, doubt remains in the mind of the court as to any essential matter of fact, the United States is entitled to the benefit of such doubt and the application should be denied. (279 U.S. at 650, 49 S.Ct. at 450.)

31. *See* Girouard v. United States, 328 U.S. 61, 66–67, 66 S.Ct. 826, 90 L.Ed. 1084 (1946) ; *In re* Hansen, 148 F. Supp. 187, 190 (D.Minn.1957).

32. The Immigration and Naturalization Service originally filed written recommendations favorable to both these petitioners. It is of course solely my responsibility to decide these cases [see In re Kwong Hai Chew, 278 F.Supp. 44 (S.D.N.Y.1967)], but I wish to indicate that I have been informed upon further consideration the Service has decided to recommend against granting these petitions.