**In re Antonia Palmieri PISCIATTANO.**

**Civ. No. 13501.**

United States District Court
D. Connecticut.

Jan. 22, 1970.

Antonia Palmieri Pisciattano, pro se.

William M. Dalton, I. N. S., New Haven, Conn., for respondent.

### MEMORANDUM OF DECISION

ZAMPANO, District Judge.

The question presented in this case is whether the petitioner's adherence to her religious beliefs as a Jehovah's Witness bars her from citizenship.

The petitioner, Antonia Palmieri Pisciattano, age 30, was admitted to the United States as a lawful permanent resident on September 2, 1955. She married a citizen of this country and now has three native-born children. On February 11, 1969, she filed a petition

for naturalization. The Naturalization Examiner opposes her petition on the ground she failed to establish that she is attached to the principles of the Constitution of the United States and well-disposed to the good order and happiness of the United States, as required by Section 316(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1427.

At a hearing before this Court, and in two sessions before the Examiner, the petitioner testified that she believes in the United States Constitution and in the form of government of the United States; that she would support and defend the Constitution by upholding and abiding by all the laws of the United States; that she has never been arrested or been a member of a subversive organization; that she loves this country; and that she would take the oath of allegiance, (except the part referring to bearing arms and performing noncombatant service in the Armed Forces) without mental reservation or inconsistent purpose.

However, because of her religious beliefs and training as a Jehovah's Witness, she stated she would not vote, engage in politics, or serve on a jury. Her minister testified that Jehovah's Witnesses do not bear arms, do not vote or engage in politics, or act as jurors, all as part of their religious tenets.

The Examiner does not challenge the petitioner's credibility nor the sincerity of her religious beliefs. Nevertheless, he contends that as a matter of law a person who refuses to participate in the political affairs of the nation displays "an attitude inconsistent with a claim of attachment to the principles of the Constitution and active support of the Constitution [which] is not made more palatable because of being based on religious beliefs." He therefore recommends denial of her petition. The Court disagrees with the inferences and conclusions drawn by the Examiner.

■ The petitioner is willing to take the oath of allegiance except as to the sections italicized:

I hereby declare on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and the laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; *that I will bear arms on behalf of the United States when required by the law; that I will perform noncombatant service in the Armed Forces of the United States when required by the law;* that I will perform work of national importance under civilian direction when required by the law; and I take this obligation freely without any mental reservation or purpose of evasion: So help me God.

Since there is no question that the petitioner has shown by clear and convincing evidence that she is opposed by reason of her religious beliefs and training to any type of service in the Armed Forces, she is excused by statute from taking the italicized portions of the oath, and she cannot be denied citizenship on that ground. 8 U.S.C.A. § 1448(a). A sincere and religiously motivated pacifist belief cannot bar naturalization. Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed.2d 1084 (1946).

■ The other reasons cited by the Examiner for petitioner's disqualification are her refusal to vote or engage in politics, and her refusal to serve on a jury. These activities certainly are vital duties of every citizen. Among other things, voting insures that the government will truly represent the will of the people; holding public office if suited enables government to function efficiently; serving as a juror is mandated by law, 28 U.S.C. § 1861, 51 Conn.Gen. Stats. 237, and is necessary if the representative character of the jury is to be maintained. It is also true that it is difficult to comprehend the claimed rela-

tionship between the biblical authorities mentioned by the petitioner and her refusal to exercise cherished democratic rights and privileges. But the issue is not whether the petitioner's beliefs are "palatable," but whether her sincerely held religious beliefs can effectively bar her from citizenship.

■ While it is settled that naturalization is clearly a privilege to be given, qualified, or withheld, as the Congress shall determine, United States Constitution, Article I, Section 8; United States v. Macintosh, 283 U.S. 605, 615, 51 S.Ct. 570, 75 L.Ed. 1302 (1931), it is significant that Congress has not expressly made any of the activities in question in this case prerequisites to citizenship. Involvement in politics and jury service are not the only ways to demonstrate an attachment to the principles of the Constitution, or to show a willingness to support and defend the Constitution and the laws of this country without mental reservation or purpose of evasion. Very few loyal, native-born citizens run for elective office, many do not vote, and a Jehovah's Witness may be excused from jury duty on religious grounds. United States v. Hillyard, 52 F.Supp. 612 (E.D. Wash.1943).

The petitioner loves this country and its institutions, participates in civic and educational affairs, obeys and supports the laws, cherishes our democratic values, practices democratic human relationships in the family and in the community, has her family and social roots deeply embedded in this society, and is a devout person. The Jehovah's Witnesses have played their part in making this country as great as it is, and they as a group should not be denied citizenship because of their dedicated religious beliefs. Under these circumstances, the Court is of the opinion that the principles established in Girouard v. United States, supra, control. There, in the course of a ruling that the refusal to bear arms in the defense of the United States did not in and of itself bar an alien from citizenship, the Supreme Court stated:

The struggle for religious liberty has through the centuries been an effort to accommodate the demands of the State to the conscience of the individual. The victory for freedom of thought recorded in our Bill of Rights recognizes that in the domain of conscience there is a moral power higher than the State. Throughout the ages men have suffered death rather than subordinate their allegiance to God to the authority of the State. Freedom of religion guaranteed by the First Amendment is the product of that struggle. As we recently stated in United States v. Ballard, 322 U.S. 78, 86, 64 S.Ct. 882, 88 L.Ed. 1148, "Freedom of thought, which includes freedom of religious belief, is basic in a society of free men. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628." The test oath is abhorrent to our tradition. Over the years Congress has meticulously respected that tradition and even in time of war has sought to accommodate the military requirements to the religious scruples of the individual. We do not believe that Congress intended to reverse that policy when it came to draft the naturalization oath. Such an abrupt and radical departure from our traditions should not be implied. 328 U.S. at 68–69, 66 S.Ct. at 829–830.

See also In re Meghnot's Petition, 238 F.Supp. 479 (E.D.Mich.1965).

The Court recognizes that In re Petition for Naturalization of Matz, 296 F. Supp. 927 (E.D.Calif.1969) represents a contrary holding. In *Matz,* the court denied petitions for naturalization of two Jehovah's Witnesses on two separate grounds. One was that the petitioners refused to take an unqualified oath "[to] perform work of national importance under civilian direction when required by the law." In the instant case, the petitioner has indicated her willingness to take this part of the oath without reservation, and, to this extent, the *Matz* decision is distinguishable. The

second reason advanced in *Matz* was expressed in part as follows:

> On the basis of *Sherbert* (Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965), I am impelled to conclude that denying petitioners naturalization because of their religious beliefs does constitute a burden on the free exercise of their religion. However, the people (through Congress) have a "paramount interest" in insuring selection of future citizens with political credos compatible with government "of the people by the people and for the people." With all due respect for the importance of the free exercise clause, I find that the right of the people to select only those most suitable for the privilege of citizenship outweighs the claim of these aliens to citizenship in spite of their religious beliefs. 296 F.Supp. at 932.

With deference, this Court disagrees.

In 1952 Congress amended 8 U.S.C. § 1448 to permit naturalization of those who on religious grounds were unwilling to bear arms or perform noncombatant service in the Armed Forces. This is clear evidence that an alien's refusal to perform an important obligation of citizenship because of his religious convictions should not bar his naturalization, provided he is otherwise qualified as a person "of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a).

In addition, the Court notes that any different construction of the statutory requirements for naturalization raises a serious constitutional question. Article I, § 8 of the Constitution empowers Congress "to establish a uniform Rule of Naturalization." No sound reason has been advanced to this Court to support the Examiner's position that the free exercise clause of the First Amendment is less applicable to the naturalization power than it is to the other express powers of Congress.

Accordingly, the petition for naturalization, No. 51993, is granted. If there is to be an appeal of this decision to the Court of Appeals for the Second Circuit, a motion for a stay of the oath may be made to this Court.