In re Petition for Naturalization of
Mathilde Lea Helene BURKE.

No. 447606.

United States District Court,
N. D. Illinois, E. D.

Oct. 12, 1971.

Harold W. Calhoun, Chicago, Ill., Naturalization Examiner for Immigration and Naturalization Service.

F. Raymond Marks, Jr., and Melvyn E. Stein, Chicago, Ill., for petitioner.

## MEMORANDUM OPINION

DECKER, District Judge.

The narrow question presented in this case is whether an alien's refusal to testify before the House Un-American Activities Committee ("HUAC") disqualifies her from naturalized citizenship.

Petitioner Mathilde Burke is a native and citizen of the Netherlands. Since 1946, she has resided in this country. On June 8, 1966, she petitioned for naturalized United States citizenship. 8 U. S.C. § 1427(a). A preliminary examination was conducted by the Immigration and Naturalization Service. 8 U.S.C. § 1446(b). The hearing examiner's report was forwarded to this court with the recommendation that the naturalization petition be denied. 8 U.S.C. § 1446(d).

The hearing examiner considered Mrs. Burke's eligibility for naturalization under two separate statutory provisions. First, he considered whether she had been associated with a Communist organization within ten years of her filing for naturalization. 8 U.S.C. § 1424. He concluded that although she had belonged to two discussion groups in 1955–1957 which taught the meaning of Communism, the evidence did not establish that the groups were Communist controlled. Second, the hearing examin-

er considered whether Mrs. Burke was "attached to the principles of the Constitution of the United States." 8 U.S.C. § 1427(a) (3). He concluded that the petitioner's attitude in joining the discussion groups was one of careless disregard of whether they might be Communist controlled. He further held that petitioner's careless disregard, as well as her refusal in 1965 to testify before HUAC, conclusively established that she did not possess the requisite attachment to the United States Constitution to qualify her for naturalization.

Petitioner demanded, and was granted, a hearing before the district court. 8 U.S.C. § 1447. At the hearing, counsel for the Immigration and Naturalization Service conceded that, aside from her refusal to testify before HUAC, there was nothing to demonstrate that Mrs. Burke lacked attachment to the principles of the Constitution.[1] Thus, the issue presented is simply whether such a refusal to testify demonstrates a lack of attachment to the principles of the Constitution, and thus disqualifies petitioner from naturalized citizenship.

Courts have generally been reluctant to define what is meant by the term "attached to the principles of the Constitution." Stasiukevich v. Nicolls, 168 F.2d 474, 477 (1st Cir. 1948). The very generality of the term suggests that Congress intended an elastic definition. Tauchen v. Barber, 183 F.2d 266, 268 (9th Cir. 1950). One court has found the necessary attachment to imply "full adherence and loyalty to the letter and the spirit of American institutions." United States v. Title, 132 F.Supp. 185, 187 (S.D.Cal.1955), aff'd, 263 F.2d 28 (9th Cir. 1959). Another has said that the term describes "those political and legal institutions that are the enduring features of American political society." Baumgartner v. United States, 322 U.S. 665, 673, 64 S.Ct. 1240, 1244, 88 L.Ed.

1. Petitioner willingly agreed to bear arms on behalf of the United States if called upon to do so; she expressed willingness to perform non-combatant service in the armed forces; and she agreed she would perform work of national importance under civilian direction when required by law. 8 U.S.C. § 1448(a) (5).

1525 (1944). See also, Schneiderman v. United States, 320 U.S. 118, 181, 63 S. Ct. 1333, 87 L.Ed. 1796 (1943) (Chief Justice Stone, dissenting).

Perhaps the most workable definition, and the one this court finds helpful, is the one announced in In re Sittler's Petition, 197 F.Supp. 278, 280 (S.D.N.Y. 1961), aff'd, 316 F.2d 312 (2d Cir. 1963), cert. denied, 376 U.S. 932, 84 S. Ct. 702, 11 L.Ed.2d 652 (1964):

"Attachment to the principles of the Constitution means merely an acceptance of the fundamental political habits and attitudes which prevail in the United States and a willingness to obey the laws which may result from them. The object of the statutory requirement is to admit as citizens only those who are in general accord with the basic principles of the community. (Citation.) Thus, the statute requires a willingness on the part of the alien to throw in his lot with our society and make its fate his own. (Citation.)"

With the foregoing principles in mind, I will review the evidence adduced before the examiner as well as the evidence brought out at the hearing before the court. Since initially entering the United States, Mrs. Burke has not been out of the country for more than three weeks at a time. She is employed as a qualified medical technician. She is married and is living in Chicago with her husband and child. She has never been arrested and has never been the subject of deportation proceedings. She has filed her income tax returns without fail. And she has been a member of numerous civic, professional and cultural societies. In all these respects, Mrs. Burke has conducted herself as a model citizen would.

■ Weighed against this is the one fault found by the Immigration and Naturalization Service, that Mrs. Burke refused to testify before HUAC in 1965.

She testified at the hearing that she relied upon the advice of her counsel in refusing to testify, and that even though her evidence would not tend to incriminate her, she nevertheless believed that she had the right to remain silent under the First and Fifth Amendments. Perhaps she was mistaken about that right. For present purposes, the issue need not be decided. The important point is that the constitutional guarantee against self-incrimination is not lightly to be waived, particularly when there are circumstances in which the waiver might be coerced. See, e. g., Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

She claimed that she was fearful of possible deportation in the event she gave the testimony and the Immigration and Naturalization Service placed the wrong interpretation upon it. She was also conscious of the pressure being exerted upon her to give her testimony as insurance against her deportation. Faced with this dilemma, I cannot say that the choice she made demonstrated such a lack of attachment to the Constitution as to warrant a denial of citizenship.

It became apparent at the hearing that quite apart from her claimed legal justification for refusing to testify before HUAC, Mrs. Burke had a philosophical aversion for the Committee's aims and objectives. She stated that she came to this country following a history of persecution at the hands of the Nazis in Europe. In her opinion, which was freely expressed, the type of inquiry conducted by HUAC was inimical to basic tenets of a free society. No doubt there are those native to this country who disagree strongly with Mrs. Burke's view of HUAC. However, as Mr. Justice Holmes wrote in a similar context, for himself and Mr. Justice Brandeis:

"[I]f there is any principle of the Constitution that more imperatively

calls for attachment than any other it is the principle of free thought—not free thought for those who agree with us, but freedom for the thought that we hate. I think that we should adhere to that principle with regard to admission into, as well as to life within this country." United States v. Schwimmer, 279 U.S. 644, 654–655, 49 S.Ct. 448, 451, 73 L.Ed. 889 (1929) (Dissenting opinion).

Likewise, I do not think Mrs. Burke should be denied naturalized citizenship because of a sincerely-held philosophical belief with which some may disagree. Certainly I would be reluctant to deny her citizenship if she failed to comply with all the technical requirements for naturalization because of a sincerely-held religious belief. In re Pisciattano, 308 F.Supp. 818 (D.Conn.1970); but see In re Petition for Naturalization of Matz, 296 F.Supp. 927 (E.D.Cal.1969).

Mrs. Burke's refusal to testify did not seem to upset the investigatory function of HUAC in any way. Nor was Mrs. Burke ever held in contempt. In short, her behavior came at a very small social cost. I agree with what the Court said in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 641–642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943).

"We can have intellectual individualism and the rich cultural diversities that we owe to exceptional minds only at the price of occasional eccentricity and abnormal attitudes. When they are so harmless to others or to the State as those we deal with here, the price is not too great."

Because the petitioner has sufficiently demonstrated her attachment to the principles of the United States Constitution, the petition for naturalization is hereby granted.